THE BOARD OF . COMMISSIONERS OF SHAWNEE COUNTY *et al.* v. THE STATE OF KANSAS, *on the relation of John N. Ives, Attorney General.*

CONSTITUTIONAL LAW — *Special Legislation* — *Authorizing County Commissioners to Build Bridge.* Chapter 98, Laws of 1891, authorizing the board of county commissioners of Shawnee county to construct and maintain a bridge across the Kansas river, on Quincy street, is unconstitutional and void, because obnoxious to the provisions of §§ 1 and 5 of article 12 of the constitution of the state; therefore, the board of county commissioners of Shawnee county is without power to construct a bridge, under the provisions of said act, across the Kansas river, within the city of Topeka.

*Error from Shawnee Circuit Court.*

THIS action was commenced on the 29th day of April, 1892, by the attorney general, on behalf of the state of Kansas, against the board of county commissioners of the county of Shawnee, the city of Topeka, and George H. Evans and J. J. Cox, partners under the firm-name and style of George H. Evans & Co., to perpetually enjoin the board of county commissioners and the other defendants from entering into a contract for the purpose of constructing a bridge across the Kansas river, on Quincy street, in the city of Topeka. On the same day, the circuit court granted a temporary restraining order, as prayed for in plaintiff's petition, and made an order directing that the application for a temporary injunction be heard on the 2d day of May, 1892. On the 2d day of May, an agreement was entered into between the plaintiff and defendants, by which the case was tried upon its merits on the 17th of May, 1892. Subsequently, the court entered judgment in favor of the plaintiff and against the defendants. At the time of rendering the judgment, the court, Hon. J. B. Johnson, presiding, delivered the following opinion:

"This action is brought to enjoin the county commissioners of Shawnee county from entering into a contract with George H. Evans & Co. for the construction of a bridge over the Kansas river, on Quincy street, in the city of Topeka. The

county commissioners are about to let a contract, under the provisions of chapter 98, Laws of 1891. It is claimed by the state that this act is unconstitutional, and that it furnishes no authority for the defendant to thus proceed. The history of this controversy, so far as it is necessary to state, is this: At the November election in 1890, there was submitted to the electors of this county a proposition to appropriate $65,000 for the construction of a bridge across the Kansas river, on Quincy street, in the city of Topeka. The proposition provided for the issue of county scrip, payable in six equal semi-annual installments. The money to pay these installments was to be raised by taxation, in three equal annual levies, upon the property of the county, one-third for each of the years 1891, 1892, and 1893. At the election the proposition carried by a large majority, and the county commissioners were about to proceed with the construction of the bridge, when injunction proceedings were instituted in the district court of this county to enjoin them from proceeding further under that proposition. In that action a temporary injunction was granted, and the case is pending in the district court. To remove the objection urged in that action against further proceedings of the county commissioners, the legislature of 1891 passed a special act authorizing the commissioners to proceed and construct the bridge. This act was published and took effect March 19, 1891. In this condition matters stood until some time in March, 1892, when the county commissioners proceeded under the provisions of the act of 1891 to advertise for bids for the construction of this bridge. George H. Evans & Co. being the lowest bidders, the contract was awarded to them for the sum of $63,200. It is admitted that the county commissioners are entitled to proceed with the construction of the bridge if the act of the legislature, known as chapter 98 of the Laws of 1891, is constitutional, and if they are proceeding in compliance with its provisions. There are, therefore, two questions for the consideration of this court: *First*, Is the act of 1891 constitutional? *Second*, Are the defendants proceeding in compliance with the provisions thereof? It is urged by the plaintiff that this act violates the provisions of §§ 1 and 5 of article 12, and § 17 of article 2, of the constitution of this state. These various sections of the constitution read as follows:

"'SECTION 1. The legislature shall pass no special act conferring corporate powers.'

"'SEC. 5. . . . Provision shall be made by general law for the organization of cities, towns, and villages.'

"'SEC. 17. All laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable, no special law shall be enacted.'

"Plaintiff's contention is that the act of 1891 in question is a special act, and that it confers corporate powers on the city of Topeka. It is urged that the act of 1891 relates to corporate powers in the following provisions:

"1. By the provisions of § 2, there is granted to the county commissioners the right to construct the bridge and its approaches on Quincy street, and it gives to the county the same control over the bridge, its approaches, and lands adjacent thereto, that it has under the general laws applicable to roads, highways, and county bridges.

"2. Section 3 provides that the construction of the bridge by the county shall forever be taken and held as an acceptance by the county•board for the county of full control over the bridge and its aproaches, and so much of Quincy street as the bridge and its approaches may occupy; and that, therefore, as between the county and the city of Topeka, the county shall have absolute control over the bridge and approaches, and shall keep and maintain the same.

"3. The bridge and its approaches being situated on one of the streets of the city, § 3 further excludes (by a special act) the city from ever granting to any person or corporation the right to lay any street railway track, gas pipes or telephone wires over or along the same, as it lawfully might do under its general corporate powers.

"4. By the terms of § 4, the city is required to pay all damages sustained by property-owners on account of the grading, anchorage, main cables, main stays or approaches used in or about said bridge.

"The question, then, is, whether these provisions render this act of the legislature obnoxious to the provisions of the constitution of the state? That this act is a special one, there can be no question. Certainly, its operation is not uniform throughout the state. It was intended to apply to this special case. It so purports in its title and upon its face. Does it confer corporate power? If it does, then it violates the fundamental law of the state, and the courts must declare it inoperative. It will be observed that the objection contained in the first, second and third propositions above stated are negative in their character. In other words, these objections are founded upon the facts that the law of 1891 deprives the city

of Topeka of corporate rights which it before exercised under the general law of the state.   This precise question seems to have been before the supreme court of this state in the case of *Gray v. Crockett*, 30 Kas. 145.   In that case the question was as to the validity of a special statute passed in 1879. This act attempted to detach certain territory from the city of Wyandotte.   There was no provision granting any power to the municipality of any kind or description; the only object or purpose of the statute was to detach from Wyandotte city certain territory.   It was urged in that case that the act did not attempt to confer corporate powers upon the city.   In its opinion in that case, the court said :

"'It must be conceded, we think, that the special act of March 12, 1879, and all similar acts, are contrary to the policy intended to be carried out by the provisions of article 12; and we think it must also be conceded, that all acts of the character of the one in question are generally inspired by personal interest, and are within the mischief intended to be prevented by the provisions of that article.   In view of the provisions of the organic act, therefore, such acts are not to be favorably considered.'

" Further on in the same case the court says :

"'In answer to all this, it is submitted that the diminution of the territorial limits of Wyandotte city does not confer corporate powers; that the special act does not attempt to delegate or confer any power upon the city; that no new or enlarged police power was given or conferred; that no additional power to borrow money was delegated; that no additional power of taxation was given; in short, that no power not before had was conferred.   This reasoning is plausible, but not sound, in view of the restrictions contained upon the legislative power of the state in article 12.   Legitimately, the logic of this reasoning leads to the conclusion that, while the corporate powers of a city cannot be added to or enlarged by a special act, they may be cut down or decreased by such an act.   The exercise by the legislature of the authority to cut down or decrease the corporate powers of a city by special acts would virtually defeat the provisions that corporations are to be created by general laws; and cities organized by general laws could have their charters modified, changed or limited by special acts, provided the acts do not enlarge or increase the corporate powers.   Such was not the purpose by the terms and restrictions of said article 12.   Not only are corporations to be created under general laws, but all changes or limitations of their powers ought also to be by general laws.   Not only are cities to be organized in accordance with the provisions of a general law, but their powers, if changed or limited at all after their incorporation, should be so changed and limited by general law.'

" There is, in the opinion of this court, no escape from the conclusion here reached.   The whole spirit of our constitution is against special legislation.   If, by special acts of the legislature, control of 300 or 400 feet of Quincy street may be taken from the city and given to the county, why not all of it? What is to prevent a special act next winter from conferring

control of Kansas avenue upon the board of county commis-
sioners of some other county? If that is competent, why not
by special act parcel out the various streets to as many differ-
ent powers? That the legislature has supreme control of
cities, towns and villages is not questioned, but that control
must be exercised in the manner ordained by the constitution.
That instrument has wisely provided that such control must
be by general laws, applicable to all alike. It is curious to
note the numerous efforts that have been made to secure spe-
cial legislation. In some instances the purpose, as in this,
has no doubt been just and worthy. While in others, quite
the reverse has been the case. The supreme court, in the case
of *Gray v. Crockett*, 30 Kas. 144, furnishes a very striking
example of the danger incident to special legislation. In that
case, a prominent citizen of Wyandotte, being the owner of
valuable property in that city, secured the passage of a special
law exempting his property from taxation in the city. The
act was held void by reason of the provisions of the constitu-
tion. He could not procure the passage of a general statute
exempting every other person from the payment of taxes, and
so it is presumed that he is still paying his due proportion of
the public revenue. The court is therefore of the opinion,
that the first, second and third objections above stated are
well taken. As to the fourth objection to the act, it will be
observed, by the terms of § 4, that the city is made liable for
all damages any property-owner may sustain 'by reason of
grading, anchorage, main cables, main stays or approaches
used in or about the construction of the bridge.' The exact
meaning of these provisions is not clear. It is probably in-
tended to make the city liable to adjacent lot-owners for the
inconvenience which may result from obstructions in the street
in front of their premises. If this is the intention, there can
be no doubt that such provision is void. For such damage
there is no remedy in this state. No other city in Kansas
possesses the corporate power to pay such claims, nor is such
obligation imposed in any other instance. Such obligation or
duty, whichever it may be, cannot be imposed by a special act
of the legislature. Nothing but a general law, uniform in its
application to all cities of the first class throughout the state,
could fix such duty or obligation. Another ground is assigned,
which, it is claimed, entitles plaintiff to the relief sought in
this case. It is this: By the terms of the act of 1891, the
defendants are authorized 'to appropriate the sum of $65,000
out of the treasury of the county in such sums and at the times

stated in the proposition hereinafter mentioned, for the purpose of constructing a free public bridge across the Kansas river at the place before mentioned, and in the proposition submitted to the electors. . . . And the bridge must be built pursuant to the terms and conditions, in all respects, as specified in the proposition submitted to the electors as aforesaid,' etc.

"One of the conditions contained in the proposition submitted to the electors was, that the bridge should be paid for out of three levies of taxes, one-third for each of the years 1891, 1892, 1893. No levy has been made for 1891, and the time has long since passed at which it can be made. It is now impossible to build it upon the terms and conditions contained in that proposition. Since it cannot be built upon the terms and conditions named in that proposition, who shall say upon what terms and conditions it can be built? The legislature undertook to do that by the act of 1891. One of the terms and conditions then imposed was, that one-third of the cost of the bridge should be raised by a levy of taxes for 1891. This provision was equivalent to a condition that the bridge should be commenced in time for such levy. If the levy of 1891 may be delayed, why not the levy of 1892 and 1893. If the conditions requiring a levy in 1891 for one-third of the money can be waived, then why cannot all of them be postponed? If they were all postponed, it would hardly be contended that the commissioners could make the levy for 1894, 1895, and 1896, or impose the whole levy for either of these years. If the act of 1891 is valid, it was a grant of power to the board of county commissioners to build a bridge at a certain place, according to certain plans, and upon certain terms and conditions as to payment. A compliance with all of these conditions is absolutely essential to the exercise of the power by the county board. It is just as competent for them to waive the provisions requiring the bridge to be located upon Quincy street and build it on Jackson street as it is to waive either of the other conditions upon which their power rests.

"It is hardly necessary, with these views, to notice other questions discussed at the hearing. But there is one other to which I deem it proper to make reference. It is this: 'A law may be constitutional in one part and unconstitutional in another,' and it is argued, therefore, that if this statute of 1891 is constitutional in that portion which permits the building of the bridge, that such portion should be upheld

Comm'rs of Shawnee Co. v. The State, *ex rel.*

and enforced.   Upon this subject the supreme court of this state has said, in 28 Kas. 453:

"'While it is undoubtedly true that a statute may be constitutional in one part and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute.'

"Applying the rule laid down, I am forced to the conclusion that this statute cannot be upheld in any of its parts. The court is aware of the disastrous consequences that may follow these conclusions, if sustained by the court of last resort.   If it be true that the bridge on Kansas avenue is in the dangerous and unsafe condition claimed, a calamity to this city may occur at any moment.   The loss of life and property that may attend the collapse of that structure, to say nothing of the damages in which the city must respond, would in all probability be appalling.   But this court does not possess the authority to provide against the consequences that may thus result.   If it did, there would be no hesitation but the bridge in question would be built.   In this case, this court has but a single duty to perform, and that is to declare the law as it is, leaving the consequences to fall where they belong.   It has endeavored to understand the subject thoroughly, and has acted in accordance with its convictions.   It is not the province of the court to make the law.   That duty is imposed upon another branch of the government.   Its duty has its beginning and its end in maintaining the constitution and in enforcing, in proper proceedings, all such laws as find their provisions within its boundaries.   It is, of course, embarrassing for one branch of the government to sit in judgment upon another, but such is the construction of our government.   The constitution is made the fundamental law.   To its provisions every other law must yield.   Its mandates are binding upon every department of the government.   It imposes upon the court the duty of interpreting and enforcing its provisions as its highest and most delicate obligation.   This obligation I have sought to perform without fear or favor and guided only by the highest sense of duty.

"The injunction prayed for in plaintiff's petition will be granted."

The defendants excepted to the judgment, and bring the case here.

*R. B. Welch*, county attorney, and *Martin & Keeler*, for plaintiffs in error:

The contention of the defendant in error is, that the act of March 9, 1891, being chapter 98 of the Laws of 1891, is a special act, applicable alone to the city of Topeka and the county of Shawnee, and therefore a violation of § 17 of article 2 of the constitution. This court has so frequently decided the precise objection now presented, that it is wholly unnecessary to do more than refer the court to its own decisions. In the case of *The State v. Hitchcock*, 1 Kas. 185, in interpreting this section of the constitution, the court says : "The legislalature must necessarily determine whether their purpose can or cannot be expediently accomplished by a general law;" and the mere fact that certain results could be accomplished by a general law does not necessarily avoid a special law passed to effect them. See, also, *Comm'rs of Norton Co. v. Shoemaker*, 27 Kas. 79; *Knowles v. Board of Education*, 33 id. 692–699. We submit that these authorities clearly establish the fact that the act of March 9, 1891, is not a violation of said § 17.

It is also insisted that the special act of March 9, 1891, is void because in violation of § 5 of article 12 of the constitution. The act of March 9, 1891, in no respect provides for the organization of cities, towns, or villages. It in no respect relates to a grant of power to any city, town, or village, respecting taxation, assessment, the borrowing of money, contracting of debts, or loaning its credit; hence, it is not in any sense a law for the organization of the city of Topeka. The term "organization," as used in this section must be construed and understood in the usual and ordinary meaning of that word — *i. e.*, to unify; to endow with the ordinary functions of municipal life; to arrange; to bring together; to unite in the form of local government the rights and interests of a class or locality. It imports affirmative legislative action, for the purpose of giving life and vitality, power and action, to a particular class or locality. The act of March 9, 1891, does

not pretend or purport to organize the city of Topeka, nor does it increase or diminish the power of taxation, assessment, the borrowing of money, contracting of debts, or loaning the credit of the city.

That § 1 of article 12 of the constitution has no application to counties and other *quasi* corporations, or political subdivisions or agencies of political power, this court has repeatedly decided. Counties, townships, school districts and other subdivisions of like character are not at all affected by this constitutional provision, nor has it any application to them. That it was competent for the legislature to empower the board of county commissioners by special act to erect this bridge, is not an open proposition. See *Beach v. Leahy*, 11 Kas. 23–29; *The State, ex rel., v. Comm'rs of Pawnee Co.*, 12 id. 426–439; *Knowles v. Board of Education*, 33 id. 692. From these decisions, it follows that the act of March 9, 1891, is not void because it confers power upon the board of county commissioners.

It is quite clear from an examination of the act of March 9, 1891, that it nowhere affirmatively grants any corporate power to the city of Topeka, and if this be true, the question then arises whether a special act of the legislature that in effect diminishes the power already existing in a city of the first class is equivalent to the granting of corporate power, within the meaning of § 1 of article 12. Examining ¶¶ 501, 5488, 5489 of Gen. Stat. of 1889, we find, first, that all avenues, streets and alleys in cities are declared public highways; secondly, that each city of 600 inhabitants and over constitutes a separate road district; and thirdly, that the board of county commissioners of each county shall determine what bridges shall be built and repaired at the expense of the county, and what by the road district. A fair construction of this legislation will certainly vest the general power in the board of county commissioners to determine what bridges shall be built and repaired at the expense of the county in every locality and road district in the county, whether such road district be an incorporated city or not.

The question of the power of county commissioners over avenues and alleys in cities has frequently been before this court, and it has been uniformly held that the fee to all streets and other grounds which have been dedicated to the use of the public by the proprietors of any city in Kansas is, under the statutes of this state, vested in the county in which such streets or public grounds are situated. *A. & N. Rld. Co. v. Garside*, 10 Kas. 552; *Heller v. A. T. & S. F. Rld. Co.*, 28 id. 625.

Now, if the legislature has plenary power over streets and highways, and full discretion as to opening, improving and vacating the same, it would seem that it was clearly within the power of the legislature to authorize a county to construct a bridge across a navigable stream dividing a city, and this without reference to any previous grant of power to the city to do the same thing, and this grant of power to the county may be made by a general or special act, as the discretion and judgment of the legislature may dictate.

Our attention has been called to the case of *Gray v. Crockett*, 30 Kas. 138, as decisive of this case. We do not so regard it. In that case it appears that, on the 29th of January, 1859, a special act of the legislature was passed incorporating the city of Wyandotte, and that a tract of farming land owned by H. C. and Martha M. Long was included in the corporate limits of the city, and this tract of land continued to constitute a part of the city of Wyandotte for more than 20 years. On the 12th of March, 1879, the legislature, by a special act of that date, attempted to reduce the territorial limits of Wyandotte by excluding said land from its limits. In that case the question was, whether the act of March 12, 1879, which undertook to absolutely destroy the territorial limits of the city of Wyandotte was void, because in violation of § 17 of article 2, and §§ 1 and 5 of article 12, of the constitution. And this court decided that said act of March 12, 1879, was unconstitutional and void, because it was a special act and reduced the territorial limits of the city of

Wyandotte; that is, in its effect destroyed the corporate body as fixed by law.

It is insisted that the act of March 9, 1891, is null and void in all of its parts because § 2 gives to the county commissioners the same control over the bridge and its approaches and the adjacent lands that it has over county bridges under the general law, and because § 3 forbids the city from authorizing the laying of street railway tracks, gas pipes, water pipes and other improvements of that kind over the proposed new bridge, and because by § 4 the city of Topeka is made liable for certain damages that may result to property-owners by reason of the construction of the bridge.

It by no means follows that the entire act is void, even if the court should conclude that §§ 2, 3 and 4 are so, because of the provisions and stipulations hereinbefore mentioned. Sections 2, 3 and 4 may be void because of the constitutional provisions under consideration, and still §§ 1, 5, 6, and 7, the material and important sections of the bill, may be altogether valid, and we submit that it is the duty of the court, if it can be fairly done, to sustain the act of March 9, 1891. See Cooley, Const. Lim. (1st ed.), pp. 159, 160, 163, 171, 177; *C. B. U. P. Rly. Co. v. A. T. & S. F. Rld. Co.*, 28 Kas. 453.

Assuming for the purposes of this argument that §§ 2, 3 and 4 are unconstitutional, still we submit that they in no wise affect the question of the constitutionality of §§ 1, 5, 6, and 7; nor is it necessary in the slightest degree that §§ 2, 3 and 4 should remain a part of the act in order to enable the board of county commissioners to proceed and construct the bridge under § 1. If the commissioners should proceed and construct the bridge under §§ 1, 5, 6, and 7, such action would in no respect interfere in the slightest degree with the corporate power or corporate existence of the city of Topeka. It would neither limit, change or diminish the municipal territory or corporate power of the city. The only result would be that the board of county commissioners, on behalf of the people of the county generally, will have furnished to the citizens of the city of Topeka and county of Shawnee a new

bridge over the Kansas river, at a cost to the people of the county generally, without in the slightest degree impairing the corporate existence or the corporate power of the city of Topeka, but upon the contrary adding a large benefit and advantage to the citizens of Topeka as well as the county generally. The legislature could have passed the act in that form, just as well as in the form that we find it, and we submit that it would not have been subject to any constitutional objection whatever, and that under such legislation the power of the commissioners to erect the bridge would have been complete and perfect without the aid of §§ 2, 3, and 4.

*A. H. Case, Vance & Campbell* and *Bradford & Huron* also filed briefs for plaintiffs in error.

*G. C. Clemens,* and *Z. T. Hazen,* for defendant in error:

The authority of the county board must be found in the act of March 9, 1891, or no such authority existed. Under the general statutes, the county board cannot invade a city of the first class. Such cities build their own bridges, even when they cost "a sum greater than $2,000." Gen. Stat. of 1889, § 555; *City of Eudora v. Miller,* 30 Kas. 494; *Comm'rs of Shawnee Co. v. City of Topeka,* 39 id. 197; *Gould v. City of Topeka,* 32 id. 485; *The State v. Mo. Pac. Rly. Co.,* 33 id. 176, 186. And see *Gallaher v. Head,* 72 Iowa, 173, and *City of Ottawa v. Rohrbough,* 42 Kas. 255. The precise point has been ruled by this court, and counsel present no reasons for the reconsideration, much less for the overruling, of the previous decisions. Until the question shall be reopened by the court itself, why should we argue it as if it were new?

But if it were conceded that, under the general statutes, a county board may construct a bridge within a city of the first class, the case of plaintiff in error would not be aided; for such a bridge as this can be built nowhere without the authority of a proposition adopted by the votes of the people; and such a proposition, when adopted, must, like any other special authority, be strictly pursued. The only proposition pre-

32—49 KAS.

tended here was adopted in November, 1890, and that provided specifically for the very bridge — and no other — shown by the Johnson & Flad plans and specifications, then on file in the county clerk's office. Nearly a year and a half afterward, the county board adopted other plans and specifications, by one Hildebrand, which "modified" the Johnson & Flad plans and specifications "in matters of detail;" and upon these new plans, not upon those specifically referred to in the proposition voted upon, was based the action of the county board which we enjoined. No matter how slight the variation, the county board had no power to make any variation; the moment it stepped outside the proposition, it was acting without authority, because its action was not authorized by a vote of the people. Only the people, at a new election, could change the original authority even in the slightest particular. It is for them to say whether the change is in a slight particular.

But this is not all. The proposition provided for the time when the board should levy the necessary taxes, and even fixed the precise dates when the county warrants should mature. After the tax-levy of 1891, and the date of maturity of the first county warrants, January 1, 1892, had gone by without action under the proposition, how could the board ever carry out the terms of that proposition? Whether it was necessary to insert these provisions in the proposition is immaterial; they were inserted, and influenced the electors, and either the proposition must be accepted in its entirety, or be altogether rejected as invalid. The county board cannot execute such parts as it may see proper to execute, rejecting the remainder. The proposition gave no absolute authority, but authority upon certain conditions, and with certain limitations. The authority cannot be assumed and the conditions and limitations ignored. Hence, even did the general statutes authorize the county board, upon a vote of the people, to build a bridge within a city of the first class, the action of the plaintiffs in error is void because not authorized by a vote of the electors. We conclude, therefore, that

the only question of law arising upon the record is, was the action of the county board, April 20, 1892, authorized by the special act of March 9, 1891?

The court below held that the commissioners had no authority under that act to erect the bridge. In support of this conclusion, we submit that, were the constitutionality of that act beyond question, the authority conferred by it upon the county board had lapsed before any action under it was attempted. Under any view, the power had lapsed before the county board took any steps toward its exercise.

The special act of March 9, 1891, is void. If the substantial provisions of either section 2, section 3 or section 4 are void, the whole act must be; for how can it be said that the legislature would have given authority to build the bridge without giving the county board absolute and exclusive control over the structure, the approaches, and the adjacent portions of the street? without forbidding the city to grant right-of-way to street railroads, or the right to lay gas or water or heating pipes or electric wires over the bridge when completed? without requiring Quincy street to be kept "open and unobstructed to the full width of 75 feet?" without requiring compensation to property-owners? The legislature provided for a bridge on a street 75 feet wide; can it be said the bridge would have been authorized if the street were to be but 50 feet wide? It provided for a bridge over which the county board should have the exclusive control, and over which the city should have no more authority nor power than it has "over county roads and highways and county bridges" under "the general laws of the state" (§ 2); can it be said the legislature would have authorized the county board to build the bridge while excluding the board from all authority over it, and vesting in the city its exclusive control?

The legislature, very emphatically and with great care to use only unambiguous words, forever forbade the use of the bridge for railroads, pipes, or wires — even providing a special injunction proceeding to prevent any such use, should it be attempted (§ 3); shall it be affirmed that the act would have

been passed just the same had the legislature supposed these restrictions were void? Compare the title of house bill 828 on second reading (House Journal, p. 658) with that it bore when it came to third reading (id., p. 752), and see that between the two readings the words "and to provide for the payment of damages by the city of Topeka" had been added to the title. This indicates either that § 4 was added as an amendment to the original bill, or that § 4 being already in the bill, the legislature required the title to be amended so as to clearly include the object of that section, and, in either case, the legislative history of the bill itself shows this section was deemed important. But where in the judicial literature of constitutional law is to be found a decision that, if a law authorizing a public improvement expressly provides for compensation to property-owners who may be injured by the work, the authority to make the improvement will be valid though the provision for compensation be void? The act itself shows the legislature meant that, if the bridge should be built, the injured property-owners must be compensated; shall it be said the legislature was indifferent as to whether property-owners were compensated or ruined — that it meant the bridge to be built at all events?

See *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kas. 453, and cases therein cited.

Sections 2, 3 and 4 of chapter 98 of the Laws of 1891 are void. The legislature can absolutely abolish every city of the first class; but can it abolish *one* city of that class? Who doubts the legislature's power to create as many municipal corporations as it chooses? But it cannot create *one* municipal corporation. *City of Council Grove*, 20 Kas. 619. It can, at will, increase or diminish the boundaries of cities; but it can neither increase nor diminish the boundaries of *one* city. *City of Wyandotte v. Wood*, 5 Kas. 603; *Gray v. Crockett*, 30 id. 138; *City of Topeka v. Gillett*, 32 id. 434. The general grant of legislative power included the power to create corporations and to deal with them after their creation by general or by special laws, at the discretion of the legislature; and the

sole reason for article 12 of the constitution was the restraint of that power by limiting its exercise to the one mode of enacting general laws.    In short, that article requires that the legislature, not a few interested persons and the members from a single locality, shall enact all laws concerning corporations. *City of Atchison v. Bartholow*, 4 Kas. 125–142.    See, also, *The State, ex rel., v. Lawrence Bridge Co.*, 22 Kas. 438–456, 458.

Knowing full well the greatest danger to such restrictions ever arises from yielding to appeals urging the supposed consequences of declaring void this or that law, and thus making precedents to be carried further and further, this court has resolutely shut its ears against such appeals.    To " the argument of convenience " it has replied :  " This argument, when presented to support this special act, and to evade the constitutional provisions contained in  said §§ 1 and 5 of article 12, does not commend itself to our judgment.    It is dangerous in principle, and if acceded to in cases like this, pernicious in results."  See *Gray v. Crockett*, 30 Kas. 138–146.  See, also, *City of Topeka v. Gillett*, 32 id. 431–434; *Gilmore v. Norton*, 10 id. 591 ; *City of Atchison v. Bartholow*, 4 id. 124.

The second section is void because it withdraws a portion of Topeka's territory from its corporate control.    If a part of Quincy street may by special act be excluded from subjection to some of Topeka's corporate powers, why may it not in like manner be excluded from subjection to all those powers — even to taxation and to the enforcement of the city ordinances?    If the power of the city may be thus withdrawn from a part of a street, may it not be so withdrawn from the whole?  *City of Eudora v. Miller*, 30 Kas. 494, 495; *Gould v. City of Topeka*, 32 id. 485.

Surely, it were unworthy quibbling to say such an act is void as was involved in *Gray v. Crockett*, 30 Kas. 138, but that § 2 of this act is valid !  A particular tract of land within a city can by special act be withdrawn from city control, if a bridge and part of a street in the very heart of a city can be

withdrawn, or logic must be no longer the science of sane reason.

Section 4 is void because it compels Topeka to pay damages which no other city of the first class has power to pay. In no other city can damages be recovered for any of the things here provided for; no other city is liable for grading done by a county board (see § 6); even Topeka is not liable for any of these damages suffered on any other street, nor to any other property-owners on Quincy street but those within 150 feet of the river. These few people are the only persons in all Kansas who can legally claim compensation for this class of injuries; the only plaintiffs in the state who can maintain an action for such damages; and the district court of Shawnee county is the only court in the state having jurisdiction over such actions, and it has jurisdiction only in this instance, and as to actions instituted by these particular persons. The mayor and council are given power to consider and to allow or reject these claims, in whole or in part. Is that not a corporate power? The city, if it must pay these claims, must have power to pay them. It must get that power—the power to tax—from this act; for otherwise it can do no such thing. Is this not a corporate power?· See *Gilmore v. Norton,* 10 Kas. 491, 504.

The opinion of the court was delivered by

HORTON, C. J.: The trial court determined that chapter 98, Laws of 1891, authorizing the board of county commissioners of Shawnee county to construct and maintain a bridge across the Kansas river, on Quincy street, in the city of Topeka, was void, because obnoxious to certain provisions of article 12 of the constitution of the state. This was followed by the further determination that the board of county commissioners had no legal power or authority to construct a bridge, under the provisions of said chapter 98, across the Kansas river, on Quincy street; therefore, the perpetual injunction prayed for in the petition filed in this case was granted.

We think that chapter 98 is violative of both §§ 1 and 5 of article 12 of the constitution, and are therefore compelled to sustain the conclusions of the court below as to the unconstitutionality of that act. In view of the lengthy opinion filed by the learned trial judge in rendering the judgment, which we are asked to review, it is unnecessary to extend, at any length, the reasons for our conclusion. In doing so, we would only reiterate the arguments of the trial judge. We refer to his opinion, incorporated in the statement of the case.

Chapter 98 is a special act, with all that these words imply. Section 4 expressly confers corporate powers upon the city of Topeka, by making the city liable to property-owners for all damages sustained by them on account of the construction of the bridge, including grading, anchorage, main cables and approaches. Section 3 confers upon the board of county commissioners full control over the bridge and its approaches, and, also, over a part of Quincy street; it therefore deprives the city of Topeka of the corporate rights granted by the general statute organizing or incorporating cities of the first class. (*City of Atchison v. Bartholow,* 4 Kas. 124; *City of Wyandotte v. Wood,* 5 id. 603; *Gray v. Crockett,* 30 id. 138; *City of Topeka v. Gillett,* 32 id. 431; *City of Wyandotte v. Corrigan,* 35 id. 21.)

In this court, for the first time, the claim is presented that the board of county commissioners of Shawnee county may construct the proposed bridge over the Kansas river, within the city of Topeka, under the general statutes of the state. Upon the findings of fact, this question is not fairly in the record. The board of county commissioners was proceeding under the provisions of chapter 98 when enjoined. Independent of that chapter, no claim was made in the court below that the board had any authority to construct any bridge within the city of Topeka. No such question was discussed before that court, or passed upon. The evidence is not preserved in the record, and the case comes here upon the findings of fact and the conclusions of law thereon. If, however, the question now raised for the first time in this case were

properly here, we do not perceive that it would benefit defendants below, plaintiffs in error. (See Gen. Stat. of 1889, ¶ 555, subdiv. 31; *City of Eudora v. Miller*, 30 Kas. 494; *Gould v. City of Topeka*, 32 id. 485; *The State v. Railway Co.*, 33 id 176; *Comm'rs of Shawnee Co. v. City of Topeka*, 39 id. 197; *City of Ottawa v. Rohrbaugh*, 42 id. 253.)

The judgment of the circuit court will be affirmed.

All the Justices concurring.