State v. Stewart.

STATE OF NEBRASKA, EX REL WILMER B. COMSTOCK
ET AL., V. ALEXANDER STEWART ET AL.

FILED JUNE 26, 1897.   No. 9180.

1. Statutes: AMENDMENTS: TITLES. It is competent for the legislature to amend a statute by a proper reference to its title, or the number of the chapter and section as published in the Compiled Statutes.

2. ——: ——: ——. The title to Senate File 176 (Session Laws, 1897, ch. 14, p. 139), with sufficient particularity designates article 1 of chapter 13*a* of the Compiled Statutes of 1895, as where the amendatory sections were intended to apply.

3. ——: ——. Where an amendatory act contains a clause plainly indicating the purpose of the legislature to repeal the original sections amended, it meets the requirements of section 11, article 3, of the constitution, which declares that an amendatory act shall "contain the section or sections so amended, and the section or sections so amended shall be repealed," though the intent to repeal may be inartistically and awkwardly expressed, and such repealing clause was drawn in the form of an amendment of the repealing clause of the act amended.

4. ——: INVALID PROVISIONS. The unconstitutionality of a portion of a statute does not invalidate the remainder when the different parts are separable and the void portion was not the consideration to the legislature to adopt the part that is valid.

5. ——: ——. When the invalid portion of an act is so interwoven with the rest that the act may not be operative with the void part eliminated, or where it is obvious, from an inspection of the act, that the invalid part formed the motive or inducement to the passage of the residue, the whole act fails.

6. ——: REPEAL: CITIES: WARDS. *Held*, That the repeal by the legislature of 1897, of section 10, article 1, chapter 13*a*, Compiled Statutes, 1895, which conferred upon city authorities the power to divide the municipality into wards, did not have the effect to abolish existing legally established wards.

7. ——: OFFICERS: LENGTH OF TERM. In the absence of any constitutional prohibition or affirmative provision fixing the term of a public officer, such term may be shortened by legislative enactment. *Douglas County v. Timme*, 32 Neb., 272, followed.

8. ——: AMENDMENTS: CONSTITUTIONAL LAW. Section 31 of Senate File 176 of the legislature of 1897 (Session Laws, ch. 14, p. 175), purporting to amend section 91 of article 1, chapter 13*a*, Compiled Statutes, 1895, contravenes section 11, article 3, of the state con-

stitution, since said amended section contains subject-matter not expressed in the title of the act, nor germane to the original section, and is amendatory of prior laws. *State v. Tibbets*, 52 Neb., 228, decided herewith, followed.

9. ——: ——: INVALID PROVISIONS. *Held*, That said amendatory section 91 was the consideration or inducement for the passage of the amended section 13 of the same act, and the unconstitutionality of the former section invalidates the latter also.

ORIGINAL action in the nature of *quo warranto* to oust respondents from the offices of councilmen of the city of Lincoln, and to instate relators therein. *Writ denied.*

*M. B. Reese,* for relators.

*Webster, Rose & Fisherdick* and *Clark & Allen, contra.*

NORVAL, J.

This is an original proceeding, in the nature of *quo warranto*, challenging the authority of the respondents to exercise the offices of councilmen of the city of Lincoln, and to oust them from said offices and to instate the relators therein. The relators, twelve in number, and the respondents Geisler and Guthrie, were councilmen of the city of Lincoln on and prior to April 1, 1897, seven of them,—Draper, Ewan, Geisler, Guthrie, Hutton, Young, and Jason D. Parker,—having been elected for a term of two years in April, 1895, and the remaining seven,—Comstock, Finley, Lawler, Spears, Webster, Woodward, and Barr Parker,—were elected for the period of two years in April, 1896. Respondents were regularly nominated prior to March 16, 1897, as candidates for election to the offices of councilmen of said city for their respective wards. After the nominations as aforesaid were made, and prior to the annual city election held on April 6, 1897, an act of the legislature was passed, known as Senate File 176 (Session Laws, 1897, ch. 14, p. 139), with an emergency clause attached, purporting to amend certain sections of the city charter of said city, whereby, among other things, the councilmen were reduced in numbers

from two to one from each of the wards. At the city election last aforesaid the respondents were elected as members of the city council, receiving a majority of all the votes cast in the city, as well as in their respective wards, in which they resided, save the respondent Barth, who failed to carry his own ward,—the second,—although he received a majority of the votes in the entire city. Respondents were duly found and declared elected, and each severally qualified according to law. Prior to the passage of Senate File 176 said city had been duly divided into seven wards, with boundaries defined by ordinance passed and published, which has not been repealed, nor in anywise annulled. The foregoing matters are either alleged in the answer of the respondents or admitted by them therein to be true. To the answer a demurrer has been interposed alleging that facts sufficient are not alleged to constitute a defense, and that the act under which respondents claim to exercise the functions of said offices is unconstitutional and void. The submission is upon the demurrer.

Although the controversy is over the title to the offices named, the important question presented for consideration is the constitutionality and validity of the said Senate File No. 176, approved March 20, 1897 (Session Laws, ch. 14, p. 139), and entitled "A bill for an act to amend sections three (3), eight (8), nine (9), eleven (11), twelve (12), thirteen (13), fourteen (14),   *   *   *   ninety-one (91), and one hundred and fifteen (115), chapter 13a of article 1 of the Compiled Statutes of 1895, for the government of cities of the first class having more than twenty-five thousand inhabitants, and to repeal section 10 and said original sections and all amendments thereto, and all acts and parts of acts inconsistent with this act." Relators argue that this act was passed by the legislature in violation of section 11, article 3, of the constitution, and void, and "the whole act is so contaminated and filled with the virus of unconstitutionality that it must all fall." We shall, as briefly as may be, notice some of the

most important objections brought forth in the briefs of counsel for relators against the validity of the law.

Both ends of the act are assailed, namely, the title and the repealing clause. The title to the act, it is claimed in argument, is vague and indefinite, because it does not with sufficient precision designate the chapter or the part of the chapter which it was the purpose of the legislature to alter or change. It will be observed the title specifies for the purpose of amendment thirty-three enumerated sections in "chapter 13a of article 1 of the Compiled Statutes of 1895," etc. The language just quoted is not technically accurate, and certainly is not the most apt or appropriate index which could have been selected by the law-makers for the purpose of indicating the subject-matter contained in the body of the bill, inasmuch as there is no "chapter 13a of article 1 of the Compiled Statutes of 1895." The compilation of the laws in that year contains numerous articles, but none of them embraces an entire chapter, while several chapters of the compilation mentioned,—among others, chapter 13a,—are subdivided into, or composed of, two or more articles. But this objection urged by counsel is technical merely, and without substantial merit. It is patent that the preposition "of" following "13a" and preceding the word "article" in the above quotation should be entirely disregarded or read "thereof,"—in either event, it would be plain to every one that the sections proposed to be amended would be found in article 1, chapter 13a, of the Compiled Statutes of 1895. That it should be so read, and this was the legislative intent, is manifest from the language of the entire title to the bill. It informs us that the chapter and article intended are devoted to "the government of cities of the first class having more than twenty-five thousand inhabitants." Turning to the Compiled Statutes for the year in question, it will be found that chapter 13a is designated "Cities of the First Class," and that article 1 thereof contains the charter, or law, governing cities of that class between 25,000 and 100,000

inhabitants. The title to the act before us, when considered as a whole, distinctly points out the article and chapter where the amendatory sections were intended to apply. It is suggested the title to this bill contains no reference to the title of the original act. To have done so was not essential to the validity of the law. This court has held, speaking through REESE, J., that "in amending an act it may be designated by its title or chapter in the Compiled Statutes." (*State v. Berka,* 20 Neb., 375; *Dogge v. State,* 17 Neb., 140; *Ballou v. Black,* 17 Neb., 392.)

The title to this Senate File 176, and some of the provisions of the act, were under consideration in *State v. Tibbets,* 52 Neb., 228, where it was ruled that the title selected by the legislature was not general and comprehensive, but restricted and limited, and that the courts have no power, by mere construction, to enlarge or amend it; that the title indicates a purpose to amend certain enumerated sections of a prior designated act, and that no amendment is allowable to a particular section which is not germane to the subject-matter of the original section proposed to be altered or changed; and that under such a limited title it will not meet the requirements of the constitution to engraft a new provision upon a section not germane thereto, although such new provision could properly have been proposed as an amendment of another section likewise mentioned in said title. Stated differently, the rule to be applied to the amendment of each particular section of the thirty-three designated in this act is precisely the same as where the amendatory act consists of a single section. With these general observations we pass to a consideration of some of the criticisms made upon this amendatory law.

Section 32 of said senate file is complained of. (Session Laws, 1897, ch. 14, p. 179.) It, in form, is amendatory of section 115 of the original act, which constituted the repealing clause of the old act, and provided "that an act entitled 'An act to incorporate cities of the first class

having less than 60,000 inhabitants, and more than 25,000 inhabitants, and regulating their duties, powers, and government,' approved March 25, 1887, and all acts amendatory thereof, and all acts and parts of acts or laws in conflict herewith, be and the same are hereby repealed." This section 32 was amended so as to read: "That said original sections three (3), eight (8), nine (9), ten (10), eleven (11), twelve (12), thirteen (13),   *   *   * and ninety-one (91) of said act as now existing, and all acts and parts of acts inconsistent with this act, be and the same are hereby repealed." The amendment of the repealing clause of a prior law which is the subject of amendment, for the purpose of effecting a repeal of the original sections sought to be amended, is indeed novel, but it does not for that reason contravene any constitutional provision. The framers of this law had a perfect right to indulge in originality of expression, so long as the language employed reflected the intention of the lawgiver. As stated by counsel for respondents, "the form of expressing the legislative intent to repeal the original sections amended, in form of amendment of the repealing clause of the original act, may make a court or jurist smile, but does not obscure the legislative intent. That is clear enough, notwithstanding the unusual manner in which it is expressed. It is simply an instance of the inartistic methods of the ordinary layman when summoned by a constituency to sit in legislative halls and formulate results of legislative deliberation. Because the intent to repeal the sections amended is inartistically drawn in form of an amendment to the repealing clause of the amended act cannot, on any of the canons of statutory construction, be held to render it ineffective where the intent is clear." No other conclusion can be drawn from this section 32 than that the object and purpose of its adoption was to repeal the original sections therein mentioned, and not merely the amendment of the original section 115, the repealing clause to the original law. The sections amended are designated with particu-

larity, and they "and all acts and parts of acts inconsist-
ent with this act be and the same are hereby repealed."
This language is plain and free from ambiguity. It re-
quires no interpolation of words in order to make the
section operative as a repealing clause of the designated
sections of the old act, and to be within the requirements
of the constitution, which declares that "No law shall be
amended unless the new act contain the section or sec-
tions so amended, and the section or sections so amended
shall be repealed."

Section 12 of the original act fixed the date for the hold-
ing of the general city elections and the time of the
opening and closing of the polls at such election. The
new section 12 contains the same provision, followed with
a proviso to the effect that if any city shall come within
the scope or purview of the act after the date fixed for
the annual city election, and not less than six months
before the date of the next annual election in such city,
the first election for city officers shall be held on the third
Tuesday next after the time such city comes under the
act, and the terms of city officers so elected shall com-
mence on the first Tuesday following such first election.
"Provided, also, that when any city previous to its coming
within the operations of this act shall have been under
the operation of the act to which this act is amendatory,
that in such city the city government shall continue under
the original act and the officers thereunder until the com-
mencement of the terms of offices under this act, after
which time the administration of the city government
shall be under this act and the officers installed under
its provisions." The first new provision added to the
original section 12, fixing the time for holding the first
city election in cities coming under the act after the date
designated for the annual election is unquestionably ger-
mane to the subject-matter of the original section, which
treated solely of city elections. We entertain some
doubts whether the other new provision quoted above
relating to official tenure is amendatory in its nature of

the original section 12. Possibly it would have been
more appropriate as an amendment to another section
of the charter governing cities of the class to which Lin-
coln belongs. Whether such is the case or not we will
not now stop to investigate, but, for present purposes,
will assume that the new legislation ingrafted onto said
section 12 was not germane, and, therefore, improperly
that the entire amendatory act is thereby invalidated and
injected as an amendment. It does not, however, follow
unenforceable, or that the respondents are not entitled to
the offices in question. It is a familiar rule of constitu-
tional law that where a law contains provisions which are
constitutional, if the valid and invalid are not so con-
nected or interwoven as to be incapable of separation, and
the valid portion is not dependent upon the part that is
void, the latter alone will be disregarded and the rest sus-
tained, if it is manifest that the void part was not an
inducement to the passage of the law. (*State v. Moore*,
48 Neb., 870, and cases there cited.) But if the valid por-
tion of a statute is so connected with the rest that it
would be inoperative with the invalid portion stricken
out, or where it is obvious from an inspection of the law
that the invalid portion formed an inducement to the
passage of the law, then the whole law is invalid. (*Trum-
ble v. Trumble*, 37 Neb., 340; *Low v. Reese Printing Co.*, 41
Neb., 127; *German-American Fire Ins. Co. v. City of Minden*,
51 Neb., 870.) The same principle has been held and
applied by other courts. (See *State v. Commissioners of
Perry County*, 5 O. St., 497; *Poindexter v. Greenhow*, 114
U. S., 270; *Slauson v. City of Racine*, 13 Wis., 398; *Dells
v. Kennedy*, 49 Wis., 555; *Black v. Trowers*, 79 Va., 123;
*State v. Blend*, 121 Ind., 514; *Johnson v. State*, 35 Atl. Rep.
[N. J.], 787; *State v. Sinks*, 42 O. St., 345; *Copeland v. City
of St. Joseph*, 126 Mo., 417; *Warren v. Mayor*, 2 Gray
[Mass.], 84.) In the last case Chief Justice Shaw, after
stating the rule that parts of an enactment may be sus-
tained while other portions are held unconstitutional,
says: "But this must be taken with this limitation, that

the parts so held respectively constitutional and uncon-
stitutional must be wholly independent of each other.
But if they are so mutually connected with and depend-
ent upon each other, as conditions, considerations, and
compensations for each other as to warrant a belief that
the legislature intended them as a whole, and that, if all
could not be carried into effect, the legislature would not
pass the residue independently, and some parts are un-
constitutional, all the provisions which are thus depend-
ent, conditional, or connected must fall with them."

In passing upon the constitutionality of a statute we
recognize the rule to be that it is the duty of the courts
to reconcile the statute with the constitution, and sus-
tain the law if possible to do so without doing violence
to the fundamental law.    All doubt must be resolved in
favor of the validity of the statute.    But the same rule
does not obtain in all its force and vigor when passing
upon a statute some parts of which have been declared
unconstitutional.    In such case there is no presumption
in favor of the legality of the remaining portion.    In *Mar-
tin v. Tyler*, 60 N. W. Rep. [N. Dak.], 392, Bartholomew,
C. J., in considering the point, said: "It is our duty to sus-
tain statutes in their entirety when possible, and to that
end we must indulge all reasonable presumptions in favor
of their constitutionality.    But, when a statute has been
once emasculated, these presumptions no longer obtain
in support of the remainder.    It should then be mani-
festly clear that the remaining portion can stand by itself,
and that the legislature did not intend that such portion
should be controlled and modified in its construction and
effect by rejected part.    *   *   *   We cannot, in support
of a fragmentary statute, indulge a presumption so un-
reasonable, and must, therefore, hold the entire statute
nugatory."    In *Skagit County v. Stiles*, 10 Wash., 388, the
court used this language: "In determining whether a
part of an act can stand where another part has been held
unconstitutional, a different rule as to presumptions is
recognized from that which obtains where the whole act

is being considered. The general rule that legislative acts are primarily presumed to be constitutional and that all intendments are to be made in favor of the act to give it effect according to the intent of the law-making power, does not apply in such cases, as the upholding of a part of an act is not favored, and where a part has been held unconstitutional and the remaining portion comes up for consideration as to whether it can stand as an independent proposition the presumptions are generally against it, and it will not be sustained unless that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected."

We having held, in *State v. Tibbets, supra*, the amended section 91 of the act of 1897 unconstitutional, can any portion of the same act stand? It is very evident that the new provisions of section 12 were not an inducement to the legislature to pass Senate File 176; and the new parts are all susceptible of being separated from the remainder of the act; and should these portions of this section claimed to be invalid be rejected and disregarded the act would be just as capable of being enforced as if the entire amendatory section was sustained, or if the new portions thereof had never been adopted. Especially is this true as regards the city of Lincoln, since the amendments to section 12 did not apply to such city, for the reason such municipality did not come within the operation of the charter governing cities of the first class subsequent to the adoption of the amendments of 1897. That Senate File 176 (Session Laws, 1897, ch. 14, p. 139) contains other invalid and also inconsistent provisions is conceded by counsel for respondents, and in speaking of them they aptly say: "The new ideas of the legislature on these subjects seem to be stuffed in as 'amendments,' without regard to relation, fitness of place or relevancy to the section amended, as though shot or stirred like plums in a pudding, lodging wherever they alighted or the motive power impelling

them came to rest." The same counsel argue that while some of the amendments may fall, they are independent of each other, and each must be tested by itself. It is not our purpose to consider at this time each provision of the amendatory act which is assailed by relators. The conclusion reached as to two of the amendatory sections now to be referred to makes it unnecessary to notice every provision of the amendatory act.

Section 13 of the original act, as amended in 1891, provides, *inter alia:* "In cities governed by the provisions of this act each ward shall elect from its residents two (2) councilmen for the term of one and two years respectively, and one annually thereafter for two years. In cities of this class now or hereafter subject to the provisions of this act, whenever, by reason of an increase of wards in such city, any ward shall be without representation it shall be lawful and proper at the next succeeding election to elect two councilmen for each of such wards for the term of one and two years. Officers whose terms are unexpired shall hold their offices for their unexpired terms, and elections shall be made as vacancies occur. There shall also be in each city governed by this act an excise board, consisting of the mayor, who shall be ex-officio member and the chairman thereof, and two members elected by the city at large, who shall hold their offices for two years. The terms of all elective officers shall commence on the Tuesday next after their election and continue until after their successors are elected and qualified," etc.

The foregoing, by the act of 1897, was changed so as to read as follows: "Sec. 13.    *    *    *    At the first annual election under the provisions of this act there shall be elected one councilman at large from each ward of such city for the term of one year, and at the expiration of the terms of such councilmen their successors shall be elected for the term of two years, at such annual election. Officers whose terms are unexpired, except councilmen and members of excise board, shall hold their offices for their

unexpired terms, and elections shall be made as vacancies occur. The terms of all elective officers shall commence on Tuesday next after their election and continue until their successors are elected and qualified," etc. (Session Laws, 1897, ch. 14, p. 141, sec. 6.) Among other changes of the original section 13 effected by the amendatory section are: First—The term of councilmen elected in 1897 was reduced from two years to one year. Second—The terms of councilmen elected in 1896 and members of the excise board were terminated. Third—The number of councilmen was reduced one-half. Fourth—Councilmen are required to be chosen by the electors of the entire city. Fifth—It abolishes the excise and police board, by omitting from the new section 13 the provision contained in the original section providing for its creation.

Attention has been challenged to the repeal of section 10 of the old law, which provided for the dividing of the city into wards, and from the fact of such repeal it is argued that ward lines have been effectually destroyed and obliterated, and the authority to create others is taken away, therefore the amended section 13, so far as it requires the election of "one councilman at large from each ward of the city," is inoperative and void. While the power to create or change the wards of a city of the class of Lincoln is withheld by the amendatory section, we are unable to agree with the counsel for relators that the entire system of ward division has been taken away or destroyed, at least as to any city governed by the old act at the time Senate File 176 was adopted. The repeal of section 10 had the effect alone to prevent the creating of other wards or the changing of the boundaries then existing at the date of such repeal. The act of 1897, in at least two sections, recognizes existing wards and ward lines. The section 4 of the amendatory act, which purports to amend section 11 of the old law, declares that precinct lines shall correspond to ward lines in any city governed by the act, and such precinct shall agree in number with the ward of the city and be co-extensive

with the same.   And the amended section 13, under con-
sideration, likewise recognizes the existence of wards
theretofore established, by requiring the election of "one
councilman at large from each ward of such city for the
term of one year."   We are constrained to hold that while
the repeal of said section 10 destroyed or took away the
authority to create wards, it did not have the effect to
abolish existing wards.

While it is true that by the amended section 13 the
terms of office of one-half of the existing councilmen were
shortened and terminated, said amendatory section is
not invalid for that reason.   The precise question was ad-
judicated in *Douglas County v. Timme*, 32 Neb., 272, where
it was distinctly held: "In the absence of any constitu-
tional prohibition or affirmative provision fixing the term
of office of any officer, or his compensation, the legislature
may change such term or compensation, and such change
of term or compensation will apply as well to the officers
then in office as to those to be thereafter elected."   The
same principle applies to the offices of councilmen.   The
official tenure of such officers is not fixed by the constitu-
tion, and hence may be shortened or terminated at the
will of the legislature.

As already indicated, this amendatory section 13 wiped
out all authority for the creation of an excise and police
board in cities governed by the act.   Did this have the
effect to invalidate either the section or the act of which
it forms a part?   It is inferable, from what has been
said, that the legislature has the undoubted right to abol-
ish an office other than one created by the constitution
itself.   The law for that purpose must, however, be con-
stitutionally adopted.   That is certain.   By section 31 of
Senate File 176 there was ingrafted into section 91 of the
old law, by way of amendment, a clause providing for the
creation of a board of fire and police commissioners in
each city governed by the act, the appointment of the
members of such board by the governor, and defining
their duties and powers.   This precise provision was

under consideration in *State v. Tibbets,* 52 Neb., 228, and the same was held unconstitutional and void because such provision was not expressed in the title to the act, and not germane to the subject-matter of the original section 91 purported to be amended. The reasons there given for that conclusion need not be restated here. The new subject-matter injected into section 91, relating to the creation of a board of fire and police commissioners, being unconstitutional, the next question to be determined is whether such provision was an inducement to the passage of the amendatory section 13. It is manifest that such clause formed one of the principal inducements for the amendment of section 13. The purpose of the legislature was not to abolish the excise and police board entirely, but rather to change the mode of selection of the members thereof from an election by the qualified voters of the city to an appointment by the governor. It is true the name of the old board is designated in the statute as "excise and police board," and in the new act it is called "board of fire and police commissioners," but this difference in name is an unimportant consideration. All the duties which had theretofore devolved upon the old board, and possibly others, were by the new act cast upon the last named body. The legislature would never have omitted from the amended section 13 the provision in the original section creating an excise board had it not been for the adoption of the new section 91. With the invalid portion of this last named section eliminated therefrom, the entire amendatory act is inoperative, since by the second proviso of section 25, chapter 50, Compiled Statutes, the exclusive power is vested in the excise board of the cities of the first class having more than 25,000 and less than 80,000 inhabitants to license the selling and giving away of intoxicating malt, spirituous, vinous, mixed or fermented liquors in such cities. If the amended section 13 stands, and the invalid portion of the new section 91 is rejected, then there is no board in existence having the power to grant liquor licenses in the city of

Lincoln. It is obvious, from a mere inspection of the act of 1897, that this situation was not within the mind of the legislature when the new section 13 was adopted, but that body contemplated that it had, by the amendatory section 91, made ample provision for the licensing of the liquor traffic. It is very evident that the said amendatory sections 13 and 91 must fall together, since the latter was the consideration for the passage of the former, and hence the original sections have not been superseded, but remain in full force and effect.

It results from this holding that the city council of Lincoln is composed of fourteen members, two from each of the wards of the city. The respondents Geisler and Guthrie were elected as their own successors to the council, and it is patent that in any view of the case a writ of ouster cannot be issued against them. Five of the relators claim to hold over on the ground that their successors have never been elected. The fact that the amended section 13 is invalid does not vitiate the vote cast for the respondents in April last for councilmen. The election was held on the same day prescribed therefor by law, before the attempted amendment of the city charter. The votes were cast for each respondent for the office of councilman, and each received a majority of the votes cast for that office in his ward, excepting the respondent Barth, who obtained a less number of votes in his ward than did William Schroeder, who was his opposing candidate for the same position. It is argued in the brief of relators that the respondents were elected "councilmen at large," which, it is insisted, is not the same office designated in the old law. There is no substantial foundation for this contention. The answer avers that defendants were each elected and duly qualified councilmen of said city, not at large, and the demurrer admits the same to be true. Moreover, the new law did not purport to change the office, but merely the election constituency, by requiring councilmen to be chosen by the voters of the entire city. Such undoubtedly was the office of the words "at

21

large" in the sense in which they are employed in the amendatory section 13. It is wholly immaterial that respondents may have pursued and recognized the law of 1897, and ignored the old one. Six of them were elected to the city council, a body legally composed of fourteen members, and have duly qualified as such; hence, as against those six, none of the relators can claim the offices as hold-overs. Mr. Barth not having received the majority of the votes cast in his ward for councilman, was not elected. The demurrer to the answer is overruled and the action will be dismissed as to him without prejudice, since his successful competitor for the office, Mr. Schroeder, is not a party to the suit, nor does it appear that he has failed to qualify. As to the other respondents, the

WRIT IS DENIED.