STEELE COUNTY v. ERSKINE et al.

(Circuit Court of Appeals, Eighth Circuit. November 20, 1899.)

No. 1,182.

1. MUNICIPAL CORPORATIONS—ACT IN EXCESS OF POWERS—CURATIVE STATUTE.

The act of a municipality done without authority previously conferred may be confirmed and legalized by subsequent legislative enactment, when legislation of that character is not prohibited by the constitution, and when the act done would have been legal had it been done under legislative sanction previously given.

2. SAME—VALIDITY OF CURATIVE STATUTE.

A retroactive legislative act confirming and legalizing a contract made by a county which had been adjudged invalid by the courts, in an action thereon, for want of authority in the county to make it, is not void, as an exercise of judicial power by the legislature, since it does not attempt to annul or affect the judgment of the court, but recognizes its validity by supplying the element which the court held lacking to render the contract valid.

3. SAME.

A municipal corporation has no vested right of property in a defense of ultra vires to a contract it has entered into, nor is it given such right by a judgment in an action against it on the contract sustaining and establishing such defense. Hence a retroactive statute conferring upon it the power which it lacked, and legalizing its action in making such contract, cannot be assailed on the ground that it deprives the corporation of its property without due process of law. Such act is the lawful exercise of the power of the legislature over subordinate public corporations.

4. SAME.

Section 185 of the constitution of North Dakota, which forbids the state or any county to make donations to or in aid of any individual, association, or corporation, does not deprive the legislature of power to legalize a contract made by a county without authority, but under which it has received the benefit of services for which it ought, in common honesty, to pay, and where such contract was for a legitimate public purpose, and might properly have been authorized by the legislature in the first instance.

5. JUDGMENT AS ADJUDICATION—MATTERS CONCLUDED—NEW ISSUES.

A judgment, in an action against a county on a contract, adjudging the contract invalid for want of authority in the county to make it, is not a bar to a subsequent suit on the same contract after it has been legalized by a curative act of the legislature.

6. STATUTE—TITLE OF ACT.

Under section 61 of the constitution of North Dakota, providing that no bill shall embrace more than one subject, which shall be expressed in its title, an act entitled "An act to amend section ten of chapter 38, Laws of 1887, being section 545 of the Compiled Laws," is valid, where the subject-matter of the amendment is germane to the original section.

In Error to the Circuit Court of the United States for the District of North Dakota.

F. W. Ames (George Murray, on the brief), for plaintiff in error.

Seth Newman, Burleigh F. Spalding, and Winfield S. Stambaugh, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This action was tried by the court without a jury. The opinion of the learned trial judge, which we find in the record, contains an accurate statement of the facts of the case, and an extended discussion of the legal questions involved. 87 Fed. 630. The opinion is as follows:

"This action is submitted to the court without a jury upon an agreed statement of facts, which may be summarized as follows: The defendant, Steele county, was organized on the 23d day of June, 1883, out of territory which had been previously embraced in the counties of Traill and Griggs. Thereafter its board of commissioners employed one E. J. McMahon to transcribe the records in the office of the registers of deeds of the old counties affecting the title to real property situated in the new. The work was prepared by him pursuant to the contract, and on the 19th day of November, 1883, the defendant's board of commissioners audited and allowed his claim at the sum of $2,010, and caused a county warrant to be issued to him for the amount of $2,680; the excess over the amount of the claim being for the purpose of making good the discount at which the warrants of the county were selling at that time. McMahon transferred the warrant to Masena B. Erskine, who thereafter brought an action upon it against the county, in which he recovered a judgment in the trial court; but the supreme court of the state on appeal reversed this judgment, and directed the lower court to dismiss the complaint, with costs. Judgment was entered accordingly in the trial court, and that portion of it relating to costs was paid by the plaintiffs, who had been substituted in the action upon the death of the original plaintiff. The decision of the supreme court was based wholly upon the following grounds: First, that at the time the contract was made with McMahon the county commissioners had no power or authority under the law to make the same; and, second, that they had no power or authority to issue any warrant for a greater sum than the amount that was agreed to be paid for the services rendered. This decision will be found in 4 N. D. 339, 60 N. W. 1050, 28 L. R. A. 645. In the course of the opinion the court uses the following language: 'Whether the transcription made by McMahon would or would not possess any legal validity as notice or otherwise is unnecessary to decide in this case; but, to say the least, there is grave reason to doubt the legal value of such transcribed records.' This decision was rendered in November, 1894. For the apparent purpose of meeting the objections thus raised, at the next session of the legislature of the state, which convened in January, 1895, an act was passed which provided as follows: 'When a new county is organized in whole or in part from an organized county, or from territory attached to such organized county for judicial purposes, it shall be the duty of the commissioners of such new county to cause to be transcribed in the proper books all the records of deeds, or other instruments relating to real property in such new county, and all the contracts heretofore made by any board of county commissioners for the transcribing of any such records are hereby made valid, and all records transcribed thereunder, or under the provisions of this act, shall have the same effect in all respects as original records, and any person authorized by such boards of county commissioners to transcribe such records shall have free access at all reasonable times to such original records for the purpose of transcribing the same.' Acts 1895, p. 43. Thereafter the plaintiffs obtained an assignment from McMahon of his claim against the county for transcribing the records, and this action is brought to enforce its payment. Several objections to plaintiffs' right of recovery are urged in the brief of defendant, but it seems necessary to consider only the following in this opinion: (1) That the act of 1895 is unconstitutional for the reason that it is an exercise of judicial power; (2) that it is unconstitutional because it deprives the county of its property without due process of law; (3) that it violates section 185 of the constitution of North Dakota, which forbids the state or any county * * * to make donations to or in aid of any individual, association, or corporation; (4) that this action is barred by the judgment in the former action.

"An examination of the statutes of the territory of North Dakota shows that newly-organized counties were usually empowered to have the records

affecting real property embraced within their limits transcribed. Steele county is the only exception found. The maintenance of such a system of records is certainly one of the usual duties of this class of corporations, and is a public, as distinguished from what is sometimes spoken of as a private, function. From this it follows that the legislature could retroactively legalize the contract, unless such action would be an infringement upon the judicial power. The act of a municipality, done without authority previously conferred, may be confirmed and legalized by subsequent legislative enactment, when legislation of that character is not prohibited by the constitution, and when that which was done would have been legal had it been done under legislative sanction previously given. Granada Co. v. Brogden, 112 U. S. 261, 5 Sup. Ct. 125, 28 L. Ed. 704; Bolles v. Brimfield, 120 U. S. 760, 7 Sup. Ct. 736, 30 L. Ed. 786; Springfield Safe-Deposit & Trust Co. v. City of Attica, 29 C. C. A. 214, 85 Fed. 387. The objection that the act in question was judicial legislation wholly misconceives the nature of the act. The legislature did not declare the contract valid which the court had adjudged invalid, but made it valid by imparting to it the legislative sanction which the court had declared was the only element wanting to its validity. The act did not construe, but completed, the imperfect contract which the county had made. Seizing upon the duty that in good conscience rested upon the county, to pay for the service which it had received, the legislature, by virtue of its authority over the municipality as a public agency of the state, ratified its act, and thereby changed its moral duty into a legal obligation. Its act was formative, not judicial. The want of power in a municipal corporation to enter into a contract is usually disclosed for the first time by an adverse decision in the courts, and, if it should be held that such a decision precludes the legislature from curing the defect, retroactive legislation would be defeated in those cases in which it has heretofore been most frequently used, and in which it has its highest justification. Such is not the law.

"The leading authority upon this subject is Town of Guilford v. Cornell, 18 Barb. 615, 13 N. Y. 143. In that case Cornell and Clark, as commissioners of highways, prosecuted an action on behalf of the town by direction of the town meeting, and, having been defeated, were compelled to pay $657.22 as costs of the litigation. They presented a claim for that amount to the town board, which was rejected, and thereupon they brought suit for its recovery. They succeeded before the referee, but the court set aside the judgment, and dismissed the complaint, with costs, upon the sole ground that there was no authority in law for the prosecution of the original action in which the costs accrued; and this decision was affirmed on appeal by the court for the correction of errors. The legislature thereupon passed a law legalizing the claim, and directing the levy of a tax upon the town for its payment. The case above referred to, reported in 18 Barb. 615, 13 N. Y. 143, was brought by the town to restrain the imposition of this tax, and one of the main contentions in support of the action was that the act legalizing the claim was void, as judicial legislation. See 18 Barb. 623, 629, 641. The court held this position unsound, the writer of the opinion saying: 'I am unable to see in what respect this act comes in conflict with any power which the judiciary has exercised, or which it deems itself authorized to exercise. The equity of the claim of Cornell and Clark was not considered by the court, and for the reason that the question presented was one of strict law, depending entirely upon whether authority to sue had been conferred upon them by statute; and the court held that it was not, and here its functions ended. The judgment of the court has not been interfered with, or their jurisdiction assumed. All that has been done is to afford relief where the court, if they would, could not.' This decision is cited and approved in Wrought-Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542. In that case the plaintiff had constructed a bridge for the defendant. Its claim for payment of the contract price having been rejected, suit was brought. Plaintiff obtained a verdict, but upon motion for a new trial the judge presiding at the circuit set aside the verdict; holding 'that the contract with the plaintiff for the construction of the new bridge was without authority, that all the proceedings were unauthorized and ineffectual to bind the town, and that the plaintiff could not recover.' Nothing was done to review this judgment, but the plaintiff had recourse to the legislature for re-

lief. An act was passed by which the proceedings of the town were legalized, and the contract made binding upon it. After the passage of this act a new action was brought by the plaintiff, which was resisted upon the ground 'that the legislature had no power to legalize and validate a claim against the town which had already been declared invalid by the judicial tribunals.' Upon a review of the authorities, the court of appeals declared this position untenable, and sustained a judgment in favor of the plaintiff.

Pennsylvania v. Wheeling & B. Bridge Co., 18 How. 421, 15 L. Ed. 453, is a striking illustration of the power of the legislature to render lawful that which has been declared unlawful by the courts. In that case the supreme court adjudged a bridge which had been constructed across the Ohio river at Wheeling under an act of the legislature of Virginia to be an obstruction to navigation, and a common nuisance, and ordered it to be so changed as not to interfere with vessels in use upon the river. The ground upon which the decision rested was that the bridge had been constructed over a navigable stream without authority of congress, and in violation of rights secured by congressional legislation. Thereafter congress passed an act which was in direct contravention of the decree. It declared the bridge which the court had adjudged to be a nuisance to be a lawful structure, and, instead of requiring the bridge to be accommodated to the vessels, it required the vessels to be so operated as not to interfere with the bridge. This act was assailed as in effect annulling the judgment of the court already rendered, and the rights determined thereby in favor of the plaintiff. But the act was sustained by the court, which held that the want of congressional authority was all that rendered the bridge an unlawful structure, and, the authority having been conferred, its character was changed. The act did not change the decree, but the subject-matter upon which the decree operated. So in this case the curative act of 1895 did not undertake to annul the judgment rendered in the first action. On the contrary, it assumed its validity, and changed, not the judgment of the court, but the contract in respect to which the judgment was rendered.

"The question as to when a curative act of the legislature is an infringement upon the judicial power is ably considered in Howell v. City of Buffalo, 37 N. Y. 271, 273; State v. City of Newark, 34 N. J. Law, 236, 240; Mills v. Charleton, 29 Wis. 400, 416; City of Emporia v. Bates, 16 Kan. 495 (opinion by Brewer, J.); Donnelly v. City of Pittsburgh (Pa. Sup.) 23 Atl. 394. These were all cases involving the validity of acts authorizing the reassessment of special assessments which had been adjudged void, and the collection thereof enjoined. The legislation was assailed upon the constitutional ground which we are now considering, and was in each case sustained by the court. It has not escaped notice that the opinions are careful to point out that the acts in question did not attempt to legalize or enforce the assessments which had been adjudged illegal by the court, but simply authorized a reassessment against the property benefited. This distinction, however, grows out of the nature of taxation. The legislature has no power to impose a specific tax upon particular property. An assessment and an opportunity to be heard are essential to a valid tax. No such limitation exists, however, when the legislature is dealing directly with a municipality which has no right to a hearing before obligations are imposed upon it by the state.

"A consideration of the nature of the defendant corporation, and the tenure by which it holds all its property and rights, will afford a complete answer to the contention that it had a vested right under the judgment in the former action, of which it could not be deprived by the legislature. The defendant is a public quasi corporation, created solely for governmental purposes. It holds all its property and rights, not as a private proprietor, but for the performance of those public duties with which it is charged by law. Being a mere instrumentality of the state for the convenient administration of government, it is at all times, both as to its powers and its rights, subject to legislative control. While it is, no doubt, true that the legislature has not such transcendent and absolute power over these bodies that it can apply property held by them to private purposes, or to public purposes wholly disconnected with the community embraced within their limits, still it is likewise true that a purely public corporation like a county cannot acquire any vested interest which will preclude the legislature from directing the application of all its property and rights to

the performance of those governmental functions which pertain to the community embraced within the corporation, and for the performance of which the corporation was created. If it were otherwise, counties, instead of being agencies of the state for administering the government, would be petty sovereignties to impede and defeat the state with claims of local interest and authority. Maryland v. Baltimore & O. R. Co., 3 How. 534, 11 L. Ed. 714; Town of East Hartford v. Hartford Bridge Co., 10 How. 511, 13 L. Ed. 518; Commissioners v. Lucas, 93 U. S. 108, 23 L. Ed. 822; Board v. Skinkle, 140 U. S. 334, 11 Sup. Ct. 790, 35 L. Ed. 446; City of New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 88, 12 Sup. Ct. 142, 35 L. Ed. 943; Creighton v. San Francisco, 42 Cal. 446; Dill. Mun. Corp. (4th Ed.) § 61 et seq. If it be the law that these public quasi corporations cannot acquire a vested right in property or contract which can limit the power of the legislature in applying the same to the public purposes of the corporation, much less can the defendant in this case claim, as against the legislature, a vested right in a judgment simply declaring in its favor the defense of ultra vires. If the judgment had not been rendered, the legislature might have legalized the acts of the defendant, and commanded it to apply funds in its treasury to the payment of the plaintiffs' claim. The most that can be said of the judgment is that it is property like the funds in the county treasury, and, if the one could be controlled and applied by legislative act, the other could also. A further answer to this objection is found in the nature of the judgment rendered in the first action. That judgment entitled the county to recover neither money nor property, but merely declared a defense, and it is difficult to see how such a judgment can create any higher right than the antecedent right whose existence it declares. The obligations of private parties must be determined by the law in force at the time of the transactions out of which they accrue. But, as we have already seen, this principle does not apply in case of public corporations, so as to preclude the passage of curative acts. It being conceded that the defendant had no vested right, as against the legislature, in the defense of ultra vires, how can a judgment which simply declares the existence of that defense create a better right than the defense itself? .

"The contention that the act in question is in violation of section 185 of the constitution of North Dakota, which forbids the state or any county to make donations to or in aid of any individual, association, or corporation, is based upon Conlin v. Board (Cal.) 33 Pac. 753, 33 L. R. A. 752; Id., 46 Pac. 279. Both these decisions involve the validity of an act whereby the legislature of the state of California attempted to impose upon the city of San Francisco the duty of paying for grading a street, a special assessment levied for that purpose having been declared invalid. The court held the act void under the constitution of California, which in its general features is similar to section 185 of the constitution of North Dakota. The gist of the decision is contained in the following language: 'The power of the legislature to appropriate any of the public moneys in the state treasury, or to direct the appropriation of the public moneys of a municipality, in cases like the foregoing, was taken away by the present constitution, and it can now make no appropriation of public moneys for which there is no enforceable claim, or upon a claim which exists merely by reason of some moral or equitable obligation, which the mind of a generous, or even just, individual, dealing with his own moneys, might prompt him to recognize as worthy of some reward.' Constitutional provisions similar to those of California and North Dakota have existed in most of the states of the Union for many years. They were adopted to correct the abuse by which municipalities, particularly in the West, were overwhelmed with debt through gratuitous donations to aid in the construction of railroads, and other like enterprises of internal improvement. With the exception of the California case above referred to, such limitations have never been held to forbid legislation validating the acts of municipal corporations which were void for want of authority which the legislature might have originally conferred. A construction of a constitutional provision which would compel the state to be less just than honorable men, and would make the public agencies of the state repositories to keep without payment whatever could be got without authority, certainly should not be adopted, except in obedience to the most imperative and unequivocal language. The provision under consideration im-

poses no such necessity. The state, as the source of justice, ought itself to be just, and should have authority to compel its public agencies to do justice; and it ought not to be determined by a forced construction that a people have ordained for their government by solemn constitutional provision a standard of honesty which would be condemned by all honorable men in the transaction of private business. To discharge an obligation which rests upon full value received is neither a 'gift' nor a 'donation.' Failure to discharge such obligations is aptly characterized by Judge Caldwell as 'that vulgar type of dishonesty which consists in obtaining goods on credit, and then refusing to pay for them.' American Nat. Bank v. National Wall-Paper Co., 23 C. C. A. 33, 77 Fed. 92. The restriction was originally directed against mere gratuities in aid of private enterprises, and there is nothing in the language of the constitution of North Dakota to indicate a change in this original purpose. The practice of validating the acts and contracts of municipalities which were void for want of authority has existed since the establishment of the government, and has been quite as frequent since the constitutional restrictions against making donations of public money as before; and, with the exception of the case of Conlin v. Board, such legislation has never been held unconstitutional. Dill. Mun. Corp. (4th Ed.) § 75. On the contrary, it has met with general approval. City of New Orleans v. Clark, 95 U. S. 644, 24 L. Ed. 521; Erskine v. Nelson Co., 4 N. D. 66, 58 N. W. 348, 27 L. R. A. 696; Trustees v. Roome, 93 N. Y. 313, 325; Cole v. State, 102 N. Y. 48, 53; Wrought-Iron Bridge Co. v. Town of Attica, 119 N. Y. 211, 23 N. E. 542; Mayor, etc., of New York v. Tenth Nat. Bank, 111 N. Y. 446, 459. Sections 10 and 11 of article 7 of the New York constitution are nearly identical in language with section 185 of the constitution of North Dakota.

"The contention that the former judgment is a bar to this action is equally untenable. The conclusive character of a judgment extends only to identical issues, and they must be such, not merely in name, but in fact and in substance. If the vital issue of the later litigation has been in truth already determined by an earlier judgment, it may not be again contested; but, if it has not,—if it is intrinsically and substantially an entirely different issue, even though capable of being described in similar language, or by a common form of expression,—then the truth is not excluded, and the judgment no answer to the different issue.' Palmer v. Hussey, 87 N. Y. 303, 306. The former judgment between these parties simply declared the contract unenforceable because it was made without legislative authority. How can such a judgment be a bar to an action upon the same contract after it has received the legislative sanction? Judgments declare the rights of parties at the time they are pronounced, but do not preclude the assertion of rights subsequently acquired. In reply to an objection identical with that which we are now considering, the supreme court said: 'It surely cannot be seriously urged that the legislature is stripped of its power to authorize a contract to have effect in the future by judicial interpretation of the contract, and which at the time had reference to the present and the past only. A very large proportion of the legislation in all the states is prompted by the decisions of the courts, and is intended to remedy some mischief pointed out or resulting from the utterances of the courts of the country.' City of New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 92, 12 Sup. Ct. 142, 35 L. Ed. 943. The present action comes within the principle of a second suit to recover real property based upon a newly-acquired title. Such an action is never barred by an adverse judgment in respect to the same property, which was rendered before the new title was acquired. Railroad Co. v. Smith, 16 C. C. A. 336, 69 Fed. 579."

We are satisfied with the conclusions reached by Judge AMIDON in his opinion. The opinion answers in a satisfactory manner all the assignments of error made in this court, save one, namely, that the act which authorized the payment of the plaintiffs' claim is in contravention of section 61 of the constitution of North Dakota, because its "title does not express its subject." The section of the constitution referred to reads as follows: "Sec. 61. No bill shall embrace more than one subject, which shall be expressed in its title,

but a bill which violates this provision shall be invalidated thereby only as to so much thereof as shall not be so expressed." The title of the act is, "An act to amend section ten of chapter 38, Laws of 1887, being section 545 of the Compiled Laws." The section, as amended, reads as it is set out in the opinion of the trial judge. The section, as it originally read, contemplated the county should pay for the transcription of records made after the passage of the act; as amended, it requires payment to be made for records transcribed by the county before as well as after the passage of the act. The amendment was strictly germane to the subject of the original section. The subject of the act was the amendment of that section which was accurately and appropriately designated, and the section as amended was set out in full in the act. The title sufficiently designated the subject of the act. It plainly indicated the object and purpose of the act, which is all the constitution requires. The subject of a statute is one thing, and its detailed provisions quite another; one is the topic, the other its treatment; one is required to be stated in the title, the other not. The provision of the North Dakota constitution on the subject is identical with that of Nebraska, and the supreme court of that state has uniformly held that acts with titles like this, "An act to amend section 4 of chapter 55 of the Compiled Statutes of Nebraska," are valid, and that such a title is a sufficient compliance with the requirement of the constitution. Dogge v. State, 17 Neb. 140, 22 N. W. 348; Muldoon v. Levi, 25 Neb. 457, 41 N. W. 280. This is the general holding of the courts on the subject. City of Omaha v. Union Pac. Ry. Co., 36 U. S. App. 615, 20 C. C. A. 219, 73 Fed. 1013; Swartwout v. Railroad Co., 24 Mich. 389; People v. Pritchard, 21 Mich. 236; People v. Kirsch, 67 Mich. 539, 35 N. W. 157; State v. Reid, 49 La. Ann. 1535, 22 South. 193; State v. Stewart, 52 Neb. 243, 71 N. W. 998. The supreme court of the state of Washington placed the same construction upon a like provision in the constitution of that state. The court say:

"If it is competent for the legislature to enact this entire body of laws under a single title, it must follow that an act to revise or re-enact the same would, upon familiar principles, be likewise valid; and, if the whole act can be revised or re-enacted under one title, the same can be revised or re-enacted in part by way of amendments, provided the parts to be amended are specified in the title." Marston v. Humes, 28 Pac. 520, 524.

The case of Harland v. Territory (Wash. T.) 13 Pac. 453, cited by the plaintiff in error, and which held a different doctrine, was expressly overruled in Marston v. Humes, supra.

"The legislature," says Judge Cooley, "must determine for itself how broad and comprehensive shall be the subject of a statute, and how much particularity shall be employed in the title defining it." Cooley, Const. Lim. 144. Statutes with titles similar to the one here assailed are common in states having a constitutional provision like that in North Dakota. It is the usual and customary title where the state has a code of laws with sections numbered consecutively. The judgment of the circuit court is affirmed.