## SPRINGFIELD SAFE-DEPOSIT & TRUST CO. v. CITY OF ATTICA.

(Circuit Court of Appeals, Eighth Circuit. February 7, 1898.)

### No. 927.

**1. ASSIGNMENT OF ERRORS—PRAYER FOR REVERSAL.**

A prayer in a petition for a writ of error that the writ may issue "for the correction of errors so complained of" is, in substance, a prayer for reversal, within the requirements of Rev. St. § 997.

**2. AGREED STATEMENT OF FACTS—MOTION FOR JUDGMENT—EXCEPTION.**

In order to question the correctness of a judgment rendered for defendant on an agreed statement of facts, it is not necessary that plaintiff should have made a formal motion for judgment on the statement, and then saved an exception to its denial. It is sufficient that he excepts to the judgment when rendered.

**3. ISSUE OF CITY BONDS—DEFECTS NOT CURED BY RECITALS OR CERTIFICATE.**

Where waterworks bonds are issued by a city in excess of the statutory limit, and without giving the notice of an election authorizing the same for the length of time required by the statute, such defects are not cured by recitals in the bonds, nor by a certificate of the state auditor that they have been regularly and legally issued.

**4. SPECIAL CURATIVE LAWS—LEGALIZING INVALID CITY BONDS.**

A special curative statute, legalizing bonds of a particular municipality, which are invalid only because of a defective or irregular exercise of the power conferred on the municipality to issue them, is not within the inhibition of Const. Kan. art. 2, § 17, that no special law shall be passed where a general law can be made applicable; nor of article 12, § 1, that the legislature shall pass no special laws conferring corporate powers.

In Error to the Circuit Court of the United States for the District of Kansas.

This action is based on the coupons of certain negotiable bonds, which were executed on January 1, 1889, by the city of Attica, a city of the third class, situated in Harper county, Kan. The case was tried below without the intervention of a jury, on an agreed statement of facts, from which agreed statement the following facts appear, which are all that we deem material, in view of the questions that are presented by the record:

On November 20, 1888, certain citizens of the city of Attica petitioned the mayor and city council of said city to call an election for the purpose of voting bonds to establish and maintain a system of waterworks in said city. On November 21, 1888, at a called special meeting of the council, the mayor of the city being in the chair, a motion was carried by a unanimous vote of the council, authorizing the mayor to call a special election to enable the qualified voters of the municipality to vote on a proposition to issue bonds in the sum of $20,000, bearing interest at the rate of 7 per cent. per annum, the proceeds of which were to be used for the construction of waterworks in and for said municipality. The mayor issued such proclamation, the same being dated November 22, 1888, appointing an election to be held on December 15, 1888, but this proclamation, for some reason, was not published in a newspaper, as required by law, until November 30, 1888. On December 5, 1888, an ordinance was passed by the city council fixing the date of the election on December 15, 1888, as specified in the mayor's proclamation, and appointing a place within the city where the same should be held. At the time and place appointed an election was held. The vote was canvassed by the council, acting as a canvassing board, and the proposition to issue bonds was carried, there being no votes cast in opposition to the measure. On January 1, 1889, the mayor and clerk of the city of Attica executed bonds to the amount of $20,000, having semiannual coupons attached for the sum of $35 each, the rate of interest being 7 per cent. per annum. It seems that some questions arose touching the legality of the proceedings by which the bonds had been authorized, and on February 27, 1889, the legislature of the state of Kansas passed the following act:

"An act to legalize the issue of waterworks bonds authorized by vote of the electors of the city of Attica, Harper county, held December 15th, 1888.

"Be it enacted by the legislature of the state of Kansas:

"Section I. That the bonds issued by the city of Attica, Harper county, Kansas, on the 1st day of January, 1889, by authority of an election held in said city on Saturday, the 15th day of December, 1888, in the sum of twenty thousand dollars for the purpose of constructing a system of water works in said city, be, and the same is hereby declared legal and valid.

"Sec. II. This act shall be in force and take effect from and after its publication in the official state paper.

"Approved February 27, 1889."

Thereafter, on March 2, 1889, the bonds in question were duly registered by the auditor of the state of Kansas, the certificate of registration indorsed upon each bond being as follows:

"State of Kansas—ss.: I, Timothy McCarthy, auditor of the state of Kansas, do hereby certify that this bond has been regularly and legally issued, that the signatures thereto are genuine, and that the same has been duly registered in my office, according to law. In witness whereof, I have hereunto set my hand and affixed my seal of office at the city of Topeka, this 2nd day of March, A. D. 1889.                    T. McCarthy, Auditor State of Kansas."

The bonds, when thus registered, were placed by the mayor of the city of Attica in the hands of a firm of brokers in the city of New York, to be sold on account of the city of Attica. They were so sold to the Springfield Safe-Deposit & Trust Company, the plaintiff in error, on March 21, 1889, for $20,699.18.

The assessment of property in the city of Attica for the year 1888, the same being the last assessment preceding the issuance of said bonds, showed the value of such property to be $97,670.56. The plaintiff in error, when it purchased said bonds on March 21, 1889, had in its possession for examination the various ordinances and resolutions, the proclamations, and the notice of election hereinbefore described. The money which was received from the plaintiff in error for the purchase of the aforesaid bonds was paid to the mayor of the city of Attica for account of the city, and was by him paid to a sugar company, to be used by it in the construction of a sugar plant in the city of Attica; but the plaintiff in error had no knowledge or notice of its being so used and diverted to other objects than that for which it was ostensibly raised. The city of Attica paid the interest coupons on said bonds as they matured from the date of their delivery up to and including the coupon which fell due January 1, 1893. When the bonds in suit were issued, and long prior thereto, an act was in force in the state of Kansas, being an act which took effect on March 6, 1872 (see sections 7185, 7187, 7190, Gen. St. Kan. 1889), which permitted cities of the first, second, and third classes to contract for the construction of waterworks, and to issue bonds to defray the cost of such works, but it was provided in said act that the interest on the amount of bonds so issued should not exceed "one per centum of the taxable valuation [of city property] as shown by the last preceding assessments." It was further provided "that before any of the bonds provided for by this act shall be issued, the city council shall submit the question of such issue to the electors of the city, at any general or special election to be called for that purpose by the council, of which election at least twenty days' notice shall be given by publication in at least one newspaper published in said city." The trial court rendered a judgment in favor of the city of Attica, the defendant in error. The case has been brought to this court on a writ of error which was sued out by the plaintiff.

Henry A. King (O. H. Bentley and Rudolph Hatfield, on the brief), for plaintiff in error.

C. V. Ferguson (F. W. Bentley, R. A. Sankey, and I. P. Campbell, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge. It is insisted, in the first place, by counsel for the defendant city, that the case is not properly before this court for review, because the assignment of errors does not contain a prayer for reversal, within the purview of section 997 of the Revised Statutes of the United States; and, in the second place, that no question is before this court for review, because the record shows that the case was tried and submitted September 19, 1896, and held under advisement until March 18, 1897, at which latter date the plaintiff below filed a motion for a judgment in its favor on the agreed statement of facts, which motion was then overruled, and an exception taken. It is urged that, because the motion for judgment was not filed when the case was taken under advisement, in September, 1896, it was made too late, and that error cannot be assigned on account of the denial of the motion. On the first of these grounds we are asked to dismiss the writ of error, and on the second to affirm the judgment. Both of these motions, however, are without merit. In its petition for a writ of error, which is found in the record, the plaintiff alleges that in the progress of the cause certain prejudicial errors were committed, all of which appear in detail in its assignment of errors, wherefore it prays that a writ of error may be issued "for the correction of errors so complained of." This is, in substance, a prayer for a reversal, within the requirements of section 997, since a reversal is the usual relief where prejudicial error has been committed. But, even if the point was well made, it is so far technical that we should have no doubt of our right and duty to permit the assignment of errors to be corrected by adding a prayer for a reversal. McClellan v. Pyeatt, 4 U. S. App. 98, 1 C. C. A. 241, and 49 Fed. 259, and authorities there cited. With reference to the application to affirm the judgment below, it is only necessary to say that the motion for judgment on the agreed facts was filed in time, even if it was not filed until the day the case was decided. Until that time the case was pending and undetermined. A formal motion for judgment, however, was, in our opinion, an unnecessary proceeding. The case having been submitted on an agreed statement, it was unnecessary to do more than to take an exception to the judgment when it was announced, and such an exception was duly taken. This exception is sufficient to enable us to decide whether the judgment is right upon the agreed facts, and the other exception taken to the action of the court in denying the plaintiff's motion for a judgment in its favor, may be ignored.

Passing to the merits of the controversy, it may be conceded at the outset that, but for the curative act of February 27, 1889, referred to in the foregoing statement, the plaintiff company would not be entitled to recover on the agreed facts. Before purchasing the bonds in question, it was in possession of, and presumably had examined, the transcript of the proceedings by the officers of the municipality in pursuance of which the securities were issued. It was also bound to take notice of the provisions of the law under which they were issued, and of the taxable valuation of property in the city of Attica, as disclosed by the assessment for the year 1888,—that being the last preceding annual assessment. Dixon Co. v. Field, 111 U. S. 83, 93, 4 Sup. Ct. 315; Sutliff v. Commissioners, 147 U. S. 230, 235, 13 Sup. Ct. 318; Lake Co.

v. Graham, 130 U. S. 682, 683, 9 Sup. Ct. 654. When it purchased these bonds, therefore, the plaintiff must be presumed to have known of at least two defects in the proceedings taken to authorize their issue, namely, that 20 days' notice of the election called to ascertain the will of the people on the proposition to issue bonds had not been given as the law required; and that the interest on the bonds at 7 per centum exceeded by $423.30 1 per cent. of the taxable value of city property, as shown by the last assessment. Under these circumstances it is obvious that the defects in question were not cured by the broad recitals which the bonds contained, nor by the certificate of the state auditor as to their legality, and that they can only be sustained as valid obligations of the municipality by virtue of the curative act heretofore mentioned. This act, in terms, declared the bonds in suit to be "legal and valid." They were bought by the plaintiff company subsequent to February 27, 1889, on the faith of that declaration, and, if the legislature had the power to so declare, they are unquestionably valid. The power of the legislature to pass the curative statute is challenged on two grounds: First, that it was a special law and therefore violates section 17, art. 2, of the constitution of the state of Kansas, which declares that "all laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted"; and, second, that it violates section 1, art. 12, of the state constitution, which declares that "the legislature shall pass no special act conferring corporate powers."

It is unnecessary to consider the first of these objections at length, since the same objection to a statute of Kansas was under consideration by this court, and was overruled in Rathbone v. Board, 49 U. S. App. 577, 83 Fed. 125. We there decided, following the construction which had been placed upon section 17, art. 2, of the state constitution, by the supreme court of Kansas in a long line of adjudications, that it is competent for the legislature of that state to pass special laws, since the question whether a general law can be made applicable in a given case is one for legislative determination, and is not subject to review by the local or federal judiciary. The first objection to the validity of the curative act is, therefore, overruled without further comment.

The second objection to the act of February 27, 1889, to the effect that it is a special act conferring corporate powers upon the city of Attica, is answered, and, in our opinion, overcome, by the decision in the case of Read v. City of Plattsmouth, 107 U. S. 568, 575, 576, 2 Sup. Ct. 208. In that case the defendant city had issued and sold bonds to the amount of $25,000, two-fifths of which, if not the whole issue, were void, because they had been issued without authority of law. Section 1, art. 8, of the constitution of the state of Nebraska contained a provision declaring that "the legislature shall pass no special act conferring corporate powers," but, notwithstanding the constitutional inhibition, the legislature of the state of Nebraska, subsequent to the issuance of the bonds, passed an act legalizing the whole issue. Inasmuch as the city had received and used the proceeds of the bonds, it was held that the act legalizing the same was not in contravention of the aforesaid provision of the Nebraska constitution; that the constitutional inhibition referred to special grants of corporate powers to be exercised by

the corporation itself in the future, and that a consideration of the evils intended to be remedied by such a constitutional prohibition should restrict it to grants of that character, so as not to include within its terms curative statutes which operate upon transactions already past and consummated.    This case, and many others, establish the general proposition that, where a municipality receives and uses money which was obtained by the sale of its bonds, and, because of some mistake made in the exercise of the power to issue them, they are invalid, it is competent for the legislature to impose the payment of the claim upon the municipality by declaring that the securities so issued shall be deemed valid, provided there is no constitutional prohibition against such legislation, and provided that that which was done in the matter of issuing the bonds would have rendered them legal, had it been done under legislative authority previously granted.    New Orleans v. Clark, 95 U. S. 644; Jonesboro City v. Cairo & St. L. R. Co., 110 U. S. 192, 4 Sup. Ct. 67; Supervisors v. Brogden, 112 U. S. 261, 5 Sup. Ct. 125; Bolles v. Brimfield, 120 U. S. 759, 7 Sup. Ct. 736; Thompson v. Perrine, 103 U. S. 806; Tifft v. City of Buffalo, 82 N. Y. 204.    A curative statute of the nature last described does not violate a constitutional provision declaring that no retroactive law shall be passed, because such a statute simply affirms or recognizes the binding obligation of securities already issued, for which the municipality has received a full consideration. New Orleans v. Clark, 95 U. S. 644, 655.    In the cases which are cited by counsel for the defendant city we have not been able to discover that the supreme court of Kansas has, as yet, placed a different construction upon section 17, art. 2, of the state constitution, than that adopted by the supreme court of the United States in Read v. City of Platts-mouth.    The decisions of the local supreme court to which we are referred, namely, City of Topeka v. Gillett, 32 Kan. 431, 4 Pac. 800; Gray v. Crockett, 30 Kan. 138, 1 Pac. 50; Commissioners of Shawnee Co. v. State, 49 Kan. 486, 31 Pac. 149; Leavenworth Co. v. Miller, 7 Kan. 479; City of Atchison v. Bartholow, 4 Kan. 124; and Gilmore v. Norton, 10 Kan. 491,—with one exception, are all cases that deal with legislative enactments which attempted to confer upon particular municipalities certain special powers or privileges, to be exercised by them in the future, and they were generally held to be invalid.    They do not sustain the contention that the legislature of Kansas has no right to pass a law applicable to a particular municipal corporation, legalizing acts already done, which are invalid by reason of a defective or irregular exercise of some corporate power, although the act works no change in the powers of the corporation to be exercised in future.    In the case of Gilmore v. Norton, 10 Kan. 491, 505, where the validity of a curative statute was involved, it was expressly conceded that the legislature might pass general curative laws, and that it might possibly pass special curative laws for corporations.    The act then under considera-tion was held invalid on the ground that the claim which the legislature had attempted to validate was illegal and inequitable.    The case was decided upon demurrer to a bill of complaint, which showed that the legislature had attempted to impose upon the municipality the duty of paying for work done by certain private individuals which the munici-pality had never authorized or attempted to authorize.    With refer-

ence to the character of the demand, the court remarked that upon the showing made by the bill it was one which the city was "under no legal or moral obligation to ever pay." A very different claim is involved in the case at bar. The city of Attica had power to issue bonds for the erection of waterworks, subject to the approval of the public, expressed at a general or special election. At an election called for that purpose, the people voted unanimously to issue the bonds in suit for the construction of waterworks, and they were issued under the seal of the city by the proper executive officers. In exercising the power in question, mistakes were made which would have invalidated the bonds in the hands of those who had knowledge of the proceedings. Whether the whole issue would have been void in the hands of an innocent purchaser for value because of the excessive interest charge imposed upon the city, or whether a part of the issue, notwithstanding the excessive interest charge, would have been valid, under the doctrine announced in the case of Turner v. Board, 27 Kan. 314, is a question which we are not required to determine on the present record. After the irregularities attending the issue of the bonds became known, the legislature saw fit to intervene, and to ratify what had been done, and on the faith of the ratifying act the bonds were purchased by the plaintiff company, the money being paid directly to the city. We are of opinion that there is no authoritative decision by the supreme court of Kansas holding that on this state of facts it was beyond the power of the legislature of Kansas to pass the curative act of February 27, 1889, and, in the absence of such an adjudication, the decision in Read v. City of Plattsmouth is a controlling authority.

It results from these views that the judgment for the defendant on the agreed facts was erroneous, and that a judgment should have been rendered for the plaintiff. Following the practice approved in Rathbone v. Board, 49 U. S. App. 577, 591, 83 Fed. 125, in a case like the present, where the decision was rendered upon an agreed statement of facts, the judgment of the circuit court will be reversed, and the cause will be remanded to that court, with directions to enter a judgment in favor of the plaintiff below for the amount of the coupons sued upon, together with all accrued interest thereon.