# JULY TERM, 1900.

PRESENT:

Hon. FRANK DOSTER, Chief Justice.
Hon. WILLIAM A. JOHNSTON, } Associate Justices.
Hon. WILLIAM R. SMITH,

The City of Enterprise v. Guilford Smith.

No. 11696. (62 Pac. 324.)

62 815|
f62 830|
| 62 815;
69 85,

1. Cities and City Officers—*Water-supply—Act Construed—Unconstitutional Provision.* The title of chapter 82, Laws of 1897 (Gen. Stat. 1899, §§ 653–665; Gen. Stat. 1897, ch. 39, §§ 9–27), so far as it relates to municipal acquisition and ownership of water-works property, reads as follows: "An act authorizing and empowering cities . . . to obtain . . . water . . . by purchasing or constructing, owning and operating . . . water-works . . . by such cities." *Held,* that the word "purchasing," in such title, was used in its popular but restricted sense of acquisition of property by voluntary agreement, for a valuable consideration, and not in its technical but enlarged sense of acquisition by all means other than descent by operation of law; therefore, *held further,* that, being used in such popular sense, the title of the act does not express the subject of the acquisition of water-works property by condemnation proceedings, and in consequence, section 12, which purports to authorize such proceedings, is unconstitutional and void.

2. Pleading and Practice—*Election of Remedies.* A plaintiff who elects to pursue one of two statutory remedies, which differ from each other in certain forms of procedure, and who avers in his petition that he has elected the remedy of such particular statute, and who, upon the hearing of his claims under it, is defeated because of its constitutional invalidity, cannot, upon error to this court, elect to treat his petition as filed under the other statute.

3. Cities and City Officers—*Water-supply—Query.* Whether, if section 12 of the act of 1897 were constitutional, it would author-

ize the condemnation of any other property than that of a private corporation, or authorize. the condemnation of anything less than the whole of a water-works property, is a query.

Error from Dickinson district court; O. L. MOORE, judge.   Opinion filed October 6, 1900.   Affirmed.

*Hurd & Hurd,* for plaintiff in error.

*Garver & Larimer,* and *T. E. Dewey,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : The city of Enterprise owns all of its water-works system or plant except the well from which the water-supply is drawn ; that is owned by one Guilford Smith.   The city, acting under chapter 82, Laws of 1897 (Gen. Stat. 1899, §§ 653–665; Gen. Stat. 1897, ch. 39, §§ 9–27), instituted an action to condemn the land of Smith, upon which the well was situated.   A demurrer to its petition for insufficiency of facts stated was filed.   The demurrer was sustained, and from the order sustaining it error has been prosecuted to this court.

The question raised relates to the constitutionality of section 12 of the act of 1897, under which the petition was filed.   That section provides for the condemnation by cities of water-works property belonging to
1. Unconstitutional private corporations.   The principal ob-
provision.         jection is that the title of the act does not express the subject of condemnation as a means to a city's acquisition of title to water-works property. The title reads as follows :

"An act authorizing and empowering cities of the first, second and third classes to obtain gas lights, electric lights, electric power, water or heat by contracting with private corporations to furnish any such

city and its citizens with such light, power, water or heat under the conditions in this act imposed, or to obtain such gas lights, electric lights, electric power, water or heat by purchasing or constructing, owning and operating gas plants, electric-light plants, electric-power plants, water-works, or heating plants, by such cities ; and for the purpose of owning and operating any such plants, to purchase or lease gas or other lands, and to repeal paragraphs 1401 and 1402 of the statutes of Kansas, 1889, and all other acts and parts of acts in conflict with this act.''

Eliminating all of this title which does not pertain to the acquisition of water-works property, it reads as follows ;

''An act authorizing and empowering cities .. . . . to obtain   .   .   .   water   .   .   .   by purchasing or constructing, owning and operating water-works.''

It is seen, therefore, that the title of the act does not express the subject of condemnation as a means of acquiring water-works property, but expresses only the subject of its acquisition by purchase. Is the word ''purchase,'' or its participle, ''purchasing,'' used in the title, comprehensive enough to include condemnation? We think not. The word ''purchase'' has two significations—a popular but restricted one, and a legal but enlarged one. The definition of the word in its legal and general sense is given as follows : ''A term including every mode of acquisition of estate known to the law, except that by which an heir on the death of his ancestor becomes substituted in his place as owner by operation of law.'' (Bouvier.) Blackstone defines the word in its legal and enlarged sense in the same way, but, after doing so, says : ''Purchase, indeed, in its vulgar and confined acceptation, is applied only to such acquisitions of land as are obtained by way of bargain and sale for money, or some other

valuable consideration." (2 Bla. Com. 241.) "A purchase, in the ordinary and popular acceptation of the term, is the transmission of property from one person to another, by their voluntary act and agreement, founded on a valuable consideration. But, in judgment of law, it is the acquisition of land by any lawful act of the party, in contradistinction to acquisition by operation of law ; and it includes title by deed, title by matter of record, and title by devise." (4 Kent, Com., 14th ed., 441.) "The word 'purchase,' in common sense, means no more than when a man gives money for anything, but in a legal sense every man is a purchaser of an estate who does not take it by descent." (*Martin v. Strachan et al.*, 1 Wils. 72.)

The word "purchase," therefore, has a defined meaning at common law. That meaning is the enlarged but technical one given to it by Blackstone, Bouvier, and Kent. However, the word in its popular sense has the narrower signification of acquisition by voluntary act or agreement for a valuable consideration. Words are sometimes used in a statute in a technical sense, and sometimes in a common and popular sense. Such words, used in a statute, as have a defined sense at common law, will be understood as used in their common-law sense, unless it appears that such sense was not intended. (Suth. Stat. Const. § 253.) How, then, can the sense in which a word of technical common-law meaning used in a statute be ascertained ? We think the rule is well stated by Sutherland (section 254) :

"Words in common use, and also having a technical sense, will, in acts intended for general operation and not dealing specially with the subject to which such words in their technical sense apply, be understood primarily in their popular sense, unless they are defined in the act or a contrary intention is otherwise

manifest. Such words, however, will be understood in a technical sense when the act treats of the subject in relation to which such words are technically employed. Thus, they are deemed technically used in legislation relating to courts and legal process. Thus, for example, the word 'party' has a technical significance. So have the words 'action,' 'suit,' and 'final judgment.' But by the cardinal rule that the intention of the lawmakers is the essence of the law, when a technical word is obviously intended to have a broader than its strict technical sense, it will receive that interpretation. In *McBride's Appeal*, 72 Pa. St. 480, the word 'actions,' in the provision in question, was held to embrace 'all civil proceedings of whatever kind,' as well as actions technically so called. Technical words are sometimes used in statutes in a popular sense."

Another author says :

" Where technical words are used in reference to technical subjects, they are primarily interpreted in the sense in which they are understood in the science, art or business in which they have acquired it. . . . But, in general, statutes are presumed to use words in their popular sense. . . . Hence, the technical meaning is rejected as soon as the judicial mind is satisfied that another is more agreeable to the object and intention." (Endl. Interp. Stat. §§ 74, 76.)

It is evident, therefore, that the word "purchasing," in the title to the act in question, was not used in its technical legal sense, because such title is not inclusive of or cognate with the technical subject of titles to real estate by purchase, but is inclusive of and cognate with the general subject of acquisition of title to real estate for water-works purposes.

The authorities, though few in number, upon the particular question, support the ruling we make. In *Kohl et al. v. United States*, 91 U. S. 367, 374, 23 L. Ed. 449, the meaning of the word "purchase," as used in

a statute providing for the condemnation of property, was considered. The court said :

"It is true the words 'to purchase' might be construed as including the power to acquire by condemnation ; for, technically, purchase includes all modes of acquisition other than that of descent. But, generally, in statutes as in common use, the word is employed in a sense not technical, only meaning acquisition by contract between the parties, without governmental interference."

In *Cummings v. Coleman*, 7 Rich. Eq. (S. C.) 509, 62 Am. Dec. 402, the word "purchaser," used in a statute making parol gifts void as to creditors, purchasers, etc., was considered as used in its popular and not in its technical sense.

It must be borne in mind that section 12 of the statute under consideration attempts to exert the sovereign power of dispossessing the citizen of his property. All the authorities hold that such statutes are to be strictly construed. No effect by implication or intendment other than that which is reasonable and necessary is allowed to them. For like reasons the same must be said of the titles to such enactments. Nothing should be regarded as comprehended within their titles except that which can with reasonably clear distinctness of view be seen. We are therefore constrained to hold that the title to the act in question does not embrace the subject of condemnation of property for water-works purposes. We regretfully come to this conclusion, because the statute is of much interest and is beneficial in its object ; but it is better that its defects be pointed out at this early date after its enactment, so that the legislature may have like early opportunity to correct them. We assume, of course, that section 12 is separable from the remainder

of the act, and that the enactment is not, therefore, subject to criticism as a whole.

? The plaintiff in error contends that, assuming section 12 of the act of 1897 to be unconstitutional, its petition can be viewed, nevertheless, as one filed under chapter 208 of the Laws of 1872 (Gen. Stat. 1899, §§ 7546–7551), being an act entitled "An act authorizing cities to construct water-works," which,

2. Election of remedies. it is claimed, authorizes the condemnation proceedings instituted. Without inquiring whether the act of 1872 is efficacious to accomplish the purpose of the plaintiff in error, it is sufficient to say that it did not bring its proceeding under that statute, but limited it to the statute of 1897. It averred in its petition :

"Said city has directed that a petition be prepared and filed in the office of the clerk of the district court of Dickinson county, state of Kansas, for the purpose of acquiring a title to said real estate, and all the title or right of said defendants, or either of them, in or to said system of water-works, as provided by chapter 82 of the Laws of Kansas of 1897."

It will be seen, therefore, that the plaintiff in error elected to pursue the special remedy supposed to be afforded by the act of 1897. That remedy, in forms of procedure, at least, differs in several particulars from those of the act of 1872. The city cannot now be allowed to convert its action into one brought upon the latter-named statute.

Independently of the question of the validity of section 12 of the act of 1897, and for the time being assuming it to be valid, it is indeed questionable whether, under its provisions, property other than that belonging to a private corporation can be condemned. It

3. Queries. makes no provision in terms for the condemnation of the property of individ-

ual owners, but provides only for the condemnation of the property of private corporations. However, not being able to uphold the statute in its constitutional aspect, we have not deemed it necessary to determine the question presented.

For like reasons, we have not deemed it necessary to determine whether, under the statute, a part only of water-works property may be condemned. It will be remembered that the condemnation undertaken in this case was not of a whole water-works plant or system, but only of a portion of it, to wit, the well or source of water-supply. These two questions which, as we say, we have not deemed it necessary to determine, may nevertheless be sufficiently serious to challenge the attention of the legislature, should it undertake the revision of the act.

The judgment of the court below is affirmed.