The City of Leavenworth *et al.* v. The Leaven-worth City & Fort Leaven,worth Water Com-pany.

No. 13,565.   (76 Pac. 451.)

SYLLABUS BY THE COURT.

1. Water-works — *Purchase by City — Injunction by Company.* The owner of a system of water-works erected and maintained un-der a valid city ordinance granting a franchise therefor for twenty years may enjoin the city from taking the plant in an unlawful manner, notwithstanding the expiration of such period.

2. ―― *Method of Selection of Appraisers Held a Substantial Part of the Contract.* An obligation assumed by the owner of property to sell it at a valuation to be fixed by three appraisers, one of them to be chosen by such owner, cannot be made the basis of compliance with a subsequent statute requiring a sale to be made at a valuation to be fixed by appraisers in the selection of whom the owner has no voice. The method of the selection of such appraisers is a substantial part of the contract.

3. ―― *Construction of Act of 1897.* Section 12 of chapter 82 of the Laws of 1897 (Gen. Stat. 1901, § 664), which was intended to authorize cities to acquire water-works by condemnation, but was held void for that purpose by reason of its defective title, cannot be construed as an attempt to require the sale of such property at a valuation to be fixed as therein provided.

4. ―― *Construction of Act of 1891.* Section 4 of chapter 73 of the Laws of 1891, if still in force, does not authorize the acquire-ment by condemnation of any water-works other than such as have been constructed under a grant made in accordance with the provisions of the preceding section of the same act.

5. Practice, Supreme Court — *Review of Injunction Proceed-ings.* When the district court upon final hearing makes per-petual a temporary injunction previously granted, and such judgment is affirmed, this court will not consider the regularity of the order granting the preliminary injunction.

6. Cities and City Officers — *Amendatory Act of 1883 Not Un-constitutional.* Chapter 34 of the Laws of 1883 is designated by its title as an act to amend certain sections of an act "to incor-porate and regulate cities of the first class." Among other ob-jects, it sought to legalize all ordinances of such cities previously passed relating to matters covered by the amended sections, so far as they would be authorized by the new act. *Held:* (1) That

the subject of this provision was sufficiently expressed in the title; (2) that it was within the power of the legislature in this manner to validate contracts made by municipal corporations in excess of their powers under the statutes then in force; (3) that the provision was not obnoxious to any of the constitutional provisions forbidding special legislation, or to the requirement that general laws must be of uniform operation.

Error from Leavenworth district court; J. H. GILL-PATRICK, judge.   Opinion filed April 9, 1904.   Affirmed.

*F. P. Fitzwilliam,* and *C. R. Middleton,* for plaintiffs in error.

*Baker & Baker,* and *Atwood & Hooper,* for defendant in error.

The opinion of the court was delivered by

MASON, J. :  On January 18, 1882, the mayor and council of Leavenworth, a city of the first class, passed an ordinance granting for twenty years to the Leavenworth City & Fort Leavenworth Water Company, a corporation, the right to construct and maintain a system of water-works and to use the streets of the city so far as necessary for the purpose.   Section 21 of the ordinance read :

"The city of Leavenworth reserves the right, on or after the expiration of twenty years from the date of this ordinance, to purchase these works of the company, together with all extensions, rights and franchises belonging to the same, upon giving said company six months' notice thereof in writing, the valuation to be determined by three hydraulic engineers not in the employ or interest of the city or company, the city choosing one, the company one, and the third by these two ; and the valuation of the works by these commissioners, or, if they fail to agree, a majority of them, shall define the sum to be paid to

the company by the city; and in case no sale of the works to the city be effected at the expiration of tweny years or thereafter as aforesaid, then the contract then existing between said parties shall continue during the period so passed over.''

The ordinance was duly accepted and acted upon by the company. At the time of its passage the city had no express power to purchase water-works, and the statute (Laws 1881, ch. 37, §35) forbade the granting of such a franchise for a longer period than twenty years, or its renewal, except by consent of a majority of the qualified voters of the city, to be ascertained at an election to be held for that purpose. This statute was amended by section 2 of chapter 34 of the Laws of 1883, which provided that upon the expiration of the twenty years for which a grant had been made, or might thereafter be made, for the maintenance of a system of water-works, the city might buy the water-works at a valuation to be fixed by three appraisers, one to be chosen by the owners, one by the city, and the third by these two; the franchise granted to·the company by the city to continue until· a purchase should be effected, such purchase to be made only in pursuance of an election by the voters of the city, and elections not to be held oftener than once in ten years. The same section also included the following:

''All ordinances heretofore passed and contracts made by the mayor and council of any city of the first class since the passage of the act of which this act is amendatory, granting to any company or corporation the right to erect, maintain and operate water-works in and for such city, provided that the same would be authorized by said section 35 as hereby amended, are hereby in all things legalized, confirmed and made valid, and all rights acquired under the

said act of which this act is amendatory are hereby preserved, subject to the provisions of this act.''

A large part of the expense of the company in the construction of its system of water-works was incurred after the passage of this act. In 1891 the whole of such section was repealed and an act was passed providing a method by which a city might under certain circumstances acquire water-works constructed by private capital at a valuation to be determined by three commissioners, one to be named by the city, one by the owner of the water-works, and the third by the district court. (Laws 1891, ch. 73, § 4; Gen. Stat. 1901, § 772.) In 1897 the legislature embodied in an independent act the same general plan with certain new features, among which was a provision that the two commissioners not selected by the court should be designated by the county commissioners. (Laws 1897, ch. 82, § 12; Gen. Stat. 1901, § 664.) This section attempted to authorize the taking of water-works by condemnation proceedings, but it has been held to be unconstitutional because that object was not expressed in the title of the act. (*Enterprise v. Smith*, 62 Kan. 815, 62 Pac. 324.)

Some six months before the expiration of the franchise granted to the water company the city gave notice that it desired to, and would, buy the water-works. The company thereafter designated an appraiser upon its part to act in fixing the value of the property. The city, however, ignored this action and called an election to vote upon a proposition to issue bonds either to purchase the existing water-works or to erect a new plant. On February 17, 1902, the water company brought an action against the city and its officers, alleging in substance that they were attempting to acquire the water-works under color of

the act of 1897, and asking that they be enjoined from attempting to take the property against the plaintiff's will in any other manner than that provided in the ordinance. A temporary injunction was granted and upon a final hearing it was made permanent. The city brings this proceeding to review the action of the district court.

It is contended on behalf of the water company that the ordinance passed in 1882 was validated by the statute of 1883, and that, notwithstanding the expiration of the twenty years, the company is entitled to the full enjoyment of all the rights granted it by the ordinance until such time as the city may see fit to purchase the water-works at a valuation made by arbitrators selected according to its terms, or according to the provisions of the statute of 1883. The city contends that the attempted ratification was ineffectual and that the rights granted by the ordinance are at an end. These conflicting claims exhibit the vital controversy between the parties; but the formal question now presented for determination is merely this: Did the trial court err in granting the permanent injunction?

The plaintiff in error assumes that the city has been enjoined from acquiring in any way a water-works system of its own, but the judgment rendered did no more than restrain the mayor and council "from taking the property of the said plaintiff without its consent in any other manner than as provided by the act of 1881, and the ordinance of 1882, and the act of 1883." A conclusion of law was made that the ordinance, in connection with the acts of 1881 and 1883, constituted a valid contract, and this declaration was incorporated in the journal entry of judgment as a part of the decree. This, however, was in effect a

mere recital in the nature of a reason for the determination reached rather than an essential part of the final judgment. It was not, and did not profess to be, an attempt to define the respective rights of the city and the company under the ordinance and statutes further than to accord to the company a sufficient standing to enable it to resist an attempt to take its property by other than lawful means. Even if the rights of the company granted by the ordinance expired absolutely at the end of twenty years, it still was the owner of the plant, and as such could claim the protection of a court of equity against an unlawful attempt to deprive it of its property.

It is unnecessary to discuss in detail the various specifications of error. The judgment must be affirmed unless it appear that either the city was not attempting to take the property without the consent of the owner and in some other manner than that provided in the ordinance (or in the statute of 1883), or that the city had a right so to take it. The findings of the court show a proclamation by the mayor calling an election to vote upon a proposition to vote bonds for the purchase or erection of water-works, reciting that the proceedings are taken under certain specified sections, including section 12 of chapter 82 of the Laws of 1897 (Gen. Stat. 1901, § 664). This is the section already cited, providing for a valuation of the water-works by commissioners appointed by the district court and county commissioners, and the city could hardly invoke its aid without admitting a design to acquire the property under its provisions. But the plaintiff in error complains that this finding has no support in the evidence, and the objection appears to be well founded. However, the finding is of no importance except for the purpose indicated, and

elsewhere in the record there is found an affidavit that an attorney of the city had admitted in open court during the progress of the litigation that defendants were proceeding under the act of 1897 to acquire the property. Under all the circumstances of the case, this will be held to be a sufficient showing in this regard.

Plaintiff in error claims that the company had no vested right in the method provided by the contract and statute of 1883 for fixing the value of the property in case of a sale to the city, and cites in support of the contention the cases of *Spring Valley Waterworks v. Schottler*, 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed. 173 (s. c., 61 Cal. 3), and *Spring Valley Waterworks v. Bartlett*, 16 Fed. (C. C.) 615. An agreement to sell upon a valuation to be fixed by three appraisers, one of them to be chosen by the company, cannot be made the basis of a compulsory sale at a valuation to be settled by commissioners in the selection of whom the company has no voice. The manner of selecting the persons who are to decide the selling price is a substantial part of such a contract. (*State, ex rel. Brown, v. McPeak*, 31 Neb. 139, 47 N. W. 691.) In the cases cited it was held that a private corporation, organized under a law authorizing it to supply water at rates to be fixed by a commission, part of the members of which were to be selected by itself, may be required to submit to a later law substituting for such commission a tribunal in the formation of which it was given no voice. But these decisions did not proceed upon the theory that the change in the method of fixing the charges for water did not affect the substantial interests of the company; they rested upon two wholly different principles. One was that "whenever private property is affected by a pub-

lic use, . . . the public, through the legislature, may determine the compensation he may charge for the use of his property." The water company being under an obligation to furnish water at reasonable rates, it was held to be competent for the legislature to provide its own method of insuring their reasonableness. But it does not follow that the state can, through any agency, determine at what price one shall sell his property. It is not apparent in the present case that the company was under any obligation to sell at a reasonable price, or at any price except such as should be fixed by the plan to which it had agreed. The other consideration upon which the California statute was upheld was the reservation by the state constitution of the power to amend any law for the formation of corporations. The original statutory provision for fixing the water-rates, the benefit of which the company sought to retain, was a part of the very act under which the corporation was formed, and the case was therefore within the express terms of the constitutional reservation.

The power of amending acts conferring corporate powers is reserved by the Kansas constitution. (Const., art. 12, § 1.) But the statute of 1883, the protection of which the company claims, did not relate to a grant of franchises to a corporation as such. It authorized certain rights to be given by the city "to any person or persons, company or corporations." (*The State v. Haun*, 61 Kan. 146, 59 Pac. 340, 47 L. R. A. 369; *County of Santa Clara v. Southern Pac. R. Co.*, 18 Fed. [C. C.] 385.) The authorities referred to, therefore, have not the full effect claimed for them. However, the question upon which they are cited does not arise here, for the legislature has not attempted to change the contract made by the city and water com-

pany. The statute of 1897 did not amend that of 1883; it did not seek to enforce the sale of the property under the contract (or the earlier statute) at a price to be fixed by a new plan; it attempted to enable the city to acquire water-works by an entirely different method—that of condemnation. It is competent for the legislature to authorize the taking of a water-works system by the right of eminent domain, notwithstanding existing contracts with the municipality, for which allowance may be made in awarding damages. (*Long Island Water Supply Co. v. Brooklyn*, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165.) Section 12 of chapter 82 of the Laws of 1897 (Gen. Stat. 1901, § 644), had it been valid, would have authorized the acquisition of the property by payment of the value as determined by the means it provided, in spite of the company's contract rights, unless an intention to prevent an interference with them might be derived from the requirement that the valuation be made "exclusive of the city's franchise or property element therein;" but by reason of the defective title the section was ineffective for any purpose.

It is suggested, however, that sufficient power to acquire the property may be found in section 4 of chapter 73 of the Laws of 1891 (Gen. Stat. 1901, § 772). As already stated, that section provided for the condemnation of water-works, and was the basis of the 1897 section, which was practically a reenactment of it with a few changes—chiefly those necessary to extend its provisions to public utilities other than water-works. Such an enactment of a new statute covering its entire subject-matter obviously effected the repeal of the earlier section, unless this result was prevented by the later section's being inoperative by reason of the defect in the title. But

even if this section of the statute of 1891 be still in force, the inquiry remains whether it applies to any water-works other than such as have been constructed under the provisions of that act.   Its language is:

"No grant or contract provided for in the preceding section shall continue for a longer period than twenty years ; and any such grant or contract may be terminated at any time after the expiration of ten years from the making of the same, or such less time as may be fixed at the time of making such grant or contract ; and the city may acquire title to the water-works property, and all the rights, privileges and franchises thereto pertaining, in the manner following.'

Probably the legislature assumed that all water-works constructed under the former act would be governed by its provisions, notwithstanding its repeal. There is an obvious difference between the language just quoted and the corresponding part of the 1897 statute, which by its terms was made applicable to any water-works.   As was said in *Enterprise v. Smith*, supra, statutes attempting to assert the sovereign power of dispossessing the citizen of his property must be strictly construed.   We hold that the statute in question applied only to water-works constructed under the provisions of that act.

There being no way other than that provided in the ordinance by which the city can lawfully acquire the water-works here involved without the consent of the defendant, there was no error in the judgment enjoining it from attempting to do so.

Plaintiff in error contends that the preliminary injunction was improvidently granted and should have been vacated.   The final judgment was in no way dependent upon, or influenced by, the rulings relating to the preliminary injunction, and since the decree for a perpetual injunction is approved by this court

there is no purpose in considering the regularity of the temporary order.

What has already been said is sufficient to determine the result of this proceeding—that the judgment of the district court must be affirmed. But to stop here would be to leave unsettled the principal matter of controversy between the parties—the question whether the attempted ratification of the contract by the act of 1883 was effective. The question is presented in the record by the declaration in the final judgment that the ordinance was valid, and as it has been fully argued on both sides it will be considered and decided. The grounds upon which the statute is attacked are three: (1) That the part under discussion was not within the title; (2) that it was void because the legislature could not by subsequent enactment give vitality to a contract which was beyond the power of the city when made; and (3), that it was obnoxious to the several constitutional provisions requiring general laws to have a uniform operation, and forbidding special legislation granting corporate powers, or providing for the organization of cities, or in any case where a general law can be made applicable.

The title was "An act to amend [certain sections of] an act entitled 'An act to incorporate and regulate cities of the first class, and to repeal all prior acts relating thereto,' approved March 4, 1881." It is argued that neither this title nor the title of the act of 1881, which is included within it, is broad enough to cover a provision legalizing existing ordinances. Existing ordinances were sought to be legalized, however, only so far as they related to the subjects involved in the amended sections and conformed to the requirements of the new act in reference thereto. This seems entirely pertinent to the matter of the

regulation of cities of the class affected. It would serve no good purpose to review the cases arising under the requirement that the title and body of an act should agree. It is sufficient to say that we do not deem this title misleading.

There are cases holding that the contract of a municipality, void for want of capacity, cannot be validated by subsequent legislation, but the great weight of authority is to the contrary. In *Brown v. Mayor*, 63 N. Y. 239, 244, it was said :

"The power of the legislature to ratify a contract entered into by a municipal corporation for a public purpose, which is *ultra vires*, results from its power to have originally authorized the very contract which was made. Municipal corporations are agencies of the state, through which the sovereign power acts in matters of local concern. It may confer upon them, subject to such constitutional restraints as exist, power to enter into contracts, and may annex such limitations and conditions to its exercise as, in its discretion, it deems proper for the protection of the public interests. The right to limit involves the power to dispense with limitations ; and in this case, as the legislature could have authorized this contract without previous advertisement or competitive bidding, it may affirm the contract, although made originally without authority of law."

See other cases cited in note to *Steele Company v. Erskine*, 39 C. C. A. 173, 181, 98 Fed. 215; also, *O'Hara v. State of New York*, 112 N. Y. 146, 19 N. E. 659, 2 L. R. A. 603, 8 Am. St. Rep. 726 ; *Los Angeles City Water Co. v. City of Los Angeles*, 88 Fed. (C. C.) 720 ; *C. & P. Telephone Co. v. Balto. City*, 89 Md. 689, 43 Atl. 784 ; *The State, ex rel. the Attorney-general, v. Miller*, 66 Mo. 328 ; *Morris & Cummings v. State, ex rel. Gussett*, 62 Tex. 728 ; *The Mill Creek Valley Str. Ry. Co. v. The Village of Carthage et al.*, 18 Ohio C. C.

216; note to *Hasbrouck v. Milwaukee*, 80 Am. Dec. 718, 730, 734.

The present case is not within the rule applied in *Commissioners of Shawnee County v. Carter*, 2 Kan. 115, and *Felix v. Wallace County*, 62 Kan. 832, 62 Pac. 667. Those cases denied the right of the legislature to perform the judicial function of determining the validity of claims asserted against municipalities. Here existing contracts were confirmed only so far as they would be authorized under the powers conferred by the new act.

The argument against the statute upon the ground that it is within the constitutional prohibition against special legislation derives plausibility from the consideration that, so far as the part now in question is concerned, it applied solely to conditions existing when the act was passed, and could have no future operation, and whether the ordinances to be affected by it were few or many their number was fixed and definite and not capable of enlargement. So much of section 1 of chapter 66 of the Laws of 1893 (Gen. Stat. 1901, § 635) as excluded from corporate limits such parts of town sites as had already been vacated was open to the same objection. But that act was upheld by the court of appeals (*Town Co. v. City of Smith Center*, 6 Kan. App. 252, 51 Pac. 801) in a decision afterward affirmed by this court (60 Kan. 857, 56 Pac. 1131). The case chiefly relied upon in this connection by plaintiff in error is *Cedar Rapids Water Co. v. Cedar Rapids*, 118 Iowa 234, 91 N. W. 1081. There the city of Cedar Rapids, having passed an ordinance in excess of its powers, the legislature by a special act attempted to give it validity. The court held the attempt to be ineffectual, but for the express reason that the practical effect of the act was to ex-

cept a single municipality from the operation of the general law relating to cities of its class, and thereby to destroy the uniformity of its operation.   Here the portion of the act complained of, instead of tending to prevent uniformity in the regulation of cities of the first class, distinctly tends to promote it.   The new methods put in force as to such cities generally are made, so far as possible, to reach back and apply to steps already taken before their adoption, so that different rules should not obtain in the same city, or even in different cities, with respect to similar matters. Similar acts were upheld against the same objections in *Kumler v. Silsbee*, 38 Ohio St. 445, and in *Davidge v. Common Council*, 62 Hun, App. Div. 525, s. c., 71 N. Y. Supp. 282.   In *Kittinger v. Buffalo Traction Co.*, 160 N. Y. 377, 396, 54 N. E. 1081, it was said of an act confirming certain consents previously given by cities for the operation of street-railroads :

"This act is general in terms and applies to every situation, like that therein described, in all of the cities of the first and second class in this state.   How many there may be we have no means of ascertaining, and it is not necessary for the one claiming the benefits of the statute to show that other corporations in the same or other cities enjoy the advantages of it. The constitutionality of a statute is not determined by matters outside of the statute, but from the statute itself."

In *Flynn v. Little Falls Electric & Water Co.*, 74 Minn. 180, 192, 77 N. W. 38, 78 N. W. 106, it was said :

"We think that counsel for the plaintiff have overlooked the fact that this is merely a curative act, intended to provide for a temporary object, to wit, the legalizing of a certain class of existing village ordinances and contracts.   For such a purpose a really distinctive class may, and often must, be based upon

existing temporary circumstances. . . . Hence,
the act is not subject to the objection of being special
legislation, if it in fact includes all existing village
ordinances and contracts similarly situated as respects
the subject and object of the act.''

In *Read v. Plattsmouth*, 107 U. S. 568, 576, 2 Sup.
Ct. 208, 27 L. Ed. 414, it was said, a curative act be
ing under consideration :

"The language of the constitution, forbidding spe-
cial legislation of that description, conferring corpo-
rate powers, evidently refers to grants of authority to
be exercised by the body itself and in the future, and
a consideration of the evil intended to be remedied by
the prohibition will confine it to grants of that char-
acter, and will not include a statute like that now
under discussion."

In *Springfield Safe Deposit & Trust Co. v. City of At-
tica*, 85 Fed. 387, 391, 29 C. C. A. 214, it was said of
various Kansas cases cited, including *City of Topeka v.
Gillett*, 32 Kan. 431, 4 Pac. 800 :

" They do not sustain the contention that the legis-
lature of Kansas has no right to pass a law applicable
to a particular municipal corporation, legalizing acts
already done, which are invalid by reason of a de-
fective or irregular exercise of some corporate power,
although the act works no change in the powers of
the corporation to be exercised in future."

In the syllabus of *Windsor v. City of Des Moines*,
101 Iowa, 343, 70 N. W. 214, it was said :

"Act April 10, 1894, to legalize certain unexecuted
grading contracts made by the city of Des Moines,
which were invalid by reason of defects in the notice
of proposals for bids, is a valid curative act, and does
not contravene constitution, article 3, section 30, for-
bidding the passage of local or special laws for the in-
corporation of cities and towns."

We hold that the act in question is not within the

purpose and intent of any of the constitutional inhibitions, and that the trial court ruled correctly that the ordinance and contract were valid.

The judgment is affirmed.

All the Justices concurring.

| 69 | 97 |
| 71 | 509 |

| 69 | 97 |
| 74 | 7 |

| 69 | 97 |
| e77 | 365 |
| 77 | 469 |

| 69 | 97 |
| 79 | 278 |
| 79 | 469 |
| 69 | 97 |
| 81 | 432 |